## ARDIZZONNE et al. v. ARCHER.

No. 7438—Opinion Filed July 25, 1916.

Rehearing Denied Jan. 7, 1919.

(160 Pac. 446; 177 Pac. 554.)

**1. Guardian and Ward—Leases—Modification.**

A guardian who has executed an oil and gas mining lease under order of and with the approval of the county court has no power to thereafter modify the terms of the lease by his act alone, without the approval of the county court, nor will the guardian's statement, to the effect that the lease is modified, bind the minor.

**2. Oil and Gas—Leases—Stipulations.**

An assignee of an oil and gas mining lease, which contains a stipulation to the effect that all covenants and conditions therein made shall be binding on the assignees of both parties, is liable for the rental payments prescribed in said lease so long as he retains the same.

**3. Same—Leases—Surrender.**

A voluntary surrender of an oil and gas mining lease, where the mode of effecting such surrender is prescribed therein, can only be made in the manner so prescribed, unless the consent of all parties thereto be given to a surrender in some other manner, and if such lease be that of a guardian for his ward, the consent of the county court having jurisdiction of the estate is necessary to render valid any mode of surrender other than that prescribed in the lease.

(Syllabus by Burford, C.)

Error from Superior Court, Tulsa County; M. A. Breckenridge, Judge.

Action by Leroy Archer, by his guardian against Joseph Ardizzonne and another, to recover certain rentals under an oil and gas

mining lease. Judgment for plaintiff. Defendants appeal. Affirmed.

Phillip Kates, for plaintiff in error.

Martin & Moss, for defendant in error.

Opinion by BURFORD, C. This was an action instituted by Leroy Archer, a minor, by John W. Archer, his legal guardian, to recover from the defendants certain rentals claimed to be due under an oil and gas mining lease. It was alleged in the petition, and appeared from the undisputed evidence, that John W. Archer, as guardian, under order of the county court of Tulsa county, sold an oil and gas mining lease covering the lands of his minor ward; that at said sale one Braun was the purchaser: that the form of lease was submitted to the county court, and the sale and the lease approved by the court, after both parties had declared themselves satisfied with it. Certain pertinent provisions of the lease are:

"The party of the second part agrees to commence a well on said premises within thirty days from the date hereof or pay at the rate of $100 in advance for each additional month commencement is delayed from the time above mentioned, for the commencement of such well until a well is commenced."

"Party of the second part, his heirs or assigns, shall have the right at any time, on the payment of $10.00 to the party of the first part, his successors or assigns, to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine. * * *

"All covenants and agreements herein set forth between the parties hereto shall extend to their successors or assigns."

It was further alleged that this lease passed by various assignments to the defendants, Ardizzonne and Ossenbeck, that a well had not been commenced, and that the rentals were due and unpaid. The defendants answered, denying that the lease set out was the true lease, but set up that it was the real intent of the parties that the contract should read $2 per acre, payable quarterly, as rental. It further set up that prior to the time the lease was assigned to them, the **guardian** had accepted from the lessee as rental for one quarter the sum of $40, and had executed and acknowledged an instrument, in which the following language occurred:

"It is understood and agreed that the provision in the above named lease, providing that the rentals should be '$100.00 per month, payable in advance, until a well should be commenced,' was and is an error, that the same should read, in order to express the intention of the parties, '$2.00 an acre per year payable quarterly, in advance."

That they had paid the rental at $2 per acre per year up until a certain date, at which time they surrendered the lease. They prayed that the plaintiff take nothing by his suit, and that the contract be reformed so as to set out the intention of the parties, as evidenced by the instrument executed by the guardian above quoted. A reply in the form of a general denial was filed and upon these pleadings the cause was tried to the court, without the intervention of a jury.

The evidence established clearly that the lease was executed in consideration of the sum of $10; that none of the transactions of the guardian, after the execution and delivery of the lease, had been submitted to the county court or received the approval of such court. The alleged surrender was attempted to be proved by the testimony of one of the defendants, to the effect that the guardian came to him and told him that he wanted to surrender, and he told the guardian that he would sign anything the guardian wanted. It was undisputed that the $10 had never been offered or paid, as provided in the clause for the surrender. It was likewise undisputed that the guardian had executed the paper from which we have quoted, and that the defendants relied upon it in taking the assignment of the lease At the close of the testimony the trial court allowed the plaintiff to make an amendment, whereby the rentals up to the date of trial were included in the amount sought to be recovered. On behalf of the plaintiffs it was further shown by the testimony of the guardian that the lease had never been surrendered, no release thereof executed, and no payment of the $10 offered or made. Under these circumstances what are the respective rights of the parties?

It was established in this jurisdiction, by Duff v. Keaton, 33 Okla. 97, 124 Pac. 291, 42 L. R. A. (N. S.) 472, that the guardian of a minor was without power to make an oil and gas mining lease, covering the ward's property, without the approval of the county court having jurisdiction of the estate of the minor. This being true, we think it clearly appears that, having made the lease and the county court having approved it, the guardian alone is absolutely without power to change or modify the terms of the lease, or bind the ward by his statement in regard to what the terms of the lease were or

should be. Whether it be taken that the county court or the guardian is the true party to such a contract it cannot be denied that the assent of the county court is an essential element to the validity thereof. The county court might never have approved the lease at $2 per acre per year. In view of the small bonus paid it must be assumed that the value to the ward arose out of the drilling of a well or the payment of the rentals. If guardians could be allowed to submit one lease to the county court, and thereafter bind their ward by statement, either oral or written, that the terms of such lease were a mistake, the door would, indeed, be wide open to fraud and theft of the estates of these minors. If the district court is bound to reform a lease executed by a guardian with the approval of the county court upon the guardian's mere statement that the terms of the lease were entirely different from the one approved and without any action of the county court subsequent to the approval of the lease, then the same result must necessarily follow. If defendant's contention be sustained, the guardian would be able to accomplish indirectly, by laying a basis for a reformation of the instrument in the district court, what he could not do directly by consenting in writing to a change in the lease itself.

The same argument applies to the alleged surrender. The lease prescribed the manner in which it might be surrendered by the lessee. This being true, we think no other mode could be adopted, except by the consent of all the parties thereto, and that the court was so much a party to the leases that if the rights of the minor to these rentals were to be given up in the manner not prescribed in the lease, the approval of the county court was a necessary requisite thereto. His consent is as necessary to a change in the mode of surrender prescribed in the lease as it is to the amount of the rentals therein covenanted to be paid.

It is strongly urged that the guardian is taking advantage of his own fraud, in that his statements induced the defendants to enter into the contract. This may be true The guardian may be personally responsible to the defendants for any fraud he may have perpetrated, but the plaintiff here is the ward and it was beyond the power of the guardian, without the consent of the county court, as we have heretofore stated, to bind the ward to a change in the instrument which the county court had approved.

It is also alleged that there was no meeting of the minds between the defendants and their assignors, inasmuch as the defendants thought they were accepting the terms of a lease which called for $2 per acre per year rental, whereas, if our construction be the true one, the lease called for and they were bound to pay $100 per month. The original lease was on record. They knew what it provided, and they were charged by law with the knowledge of the limitations of the power of the guardian. There seem to be two answers to their contention; one is that the mistake made, if any, appears to be a mistake of law as to the effect of the instrument executed by the guardian; secondly, that if there were any lack of meeting of the minds between themselves and their assignor, such fact might, in proper cases, have been ground for a cancellation of the assignment, but this they did not ask. What they sought was the reformation of the lease. This we think, for the reasons above given, the trial judge properly denied.

Finally it is urged that there was error in allowing the amendment to the petition. With this contention we cannot agree. The facts upon which a recovery of the amount accruing after the filing of the petition, and before the trial, were exactly the same as would authorize a recovery of the amount due before the filing of the petition. This amendment was only in effect a supplemental pleading, asking for a recovery of the amount which had accrued since the filing of the petition. Under sections 4795 and 4790, Rev. Laws 1910, we think the allowance of the amendment was justified. It is insisted, however, that there was no proof that the defendants were in possession of the lease at the time of the trials, as they had testified that they had surrendered. We have already determined that they could not lawfully surrender it in the manner they claim such surrender was effected. The testimony showed, and their answer admitted, the execution of the assignment of the lease to them. The guardian testified on the trial that it had not been surrendered, and that, the $10 had never been paid. This testimony, aside from any presumption arising from the recording and retention of the assignment, and the failure to execute a release, we think clearly justified the trial court in finding that they still retained the rights and were bound by the liabilities accruing to them by virtue of the assignment.

We find no error in the record, and the judgment should be affirmed.

By the Court: It is so ordered.

On Petition of Rehearing.

PER CURIAM. One of the issues in this case made by the answer of the plaintiffs in error, defendants below, and the reply of defendant in error, plaintiff below, is that the payment agreed upon for delay in commencing a well was $2 per acre per year, payable quarterly in advance, and that by mutual mistake the lease as reduced to writing, signed, and approved, provided for payment of $100 per month for delay in such commencement.

In their petition for rehearing, plaintiffs in error call attention to assignments of error to the effect that the trial court erred in excluding certain testimony tending to sustain this issue on their part. The only testimony offered by plaintiffs in error on this issue is a statement of the guardian contained in a receipt executed by him to the original lessee for the payment of rentals, which is set out in the former opinion in the case. While when first offered this statement in the receipt was excluded, it appears that subsequently the same was admitted. The record discloses that the following question was asked the guardian, who testified as a witness, and the following answer made:

"Q. I will ask you, Mr. Archer, if on or about the 22d of April, 1912, or at some time subsequent to February 17, 1912, you made a statement that the consideration in the lease of February 17, 1912, on the allotment of Leroy Archer, '$100 per month payable in advance until the well should be commenced,' to be paid by the lessee was in error, and should read in order to express the intention of the parties, '$2 an acre per year, payable quarterly in advance'? A. Yes, sir; there was. I don't remember just how long probably a couple of months, something like that, Mr. Braum came to me and told me this was a mistake in the contract as approved by the court."

It further appears from the record that the plaintiffs in error offered the guardian as a witness on the issue above stated, and an objection was sustained to the following question:

"Q. I will ask you, Mr. Archer, to state whether or not the agreement or the lease upon the 80 acres of Leroy Archer was that the lease should contain a stipulation for $2 an acre per year, payable quarterly in advance"?

The plaintiffs in error made no statement or showing as to what the answer of the witness would have been had he been permitted to do so. It further appears that substantially the same question was later asked the witness, which he was permitted to answer; the answers being unfavorable to the plaintiffs in error. These questions and answers are as follows:

"Q. Mr. Archer, at the time this lease was executed by Mr. Braum, I will ask you if the agreement you had with Braum with reference to the lease, and which you reported to the county court of Tulsa county on February 17, 1912, as a proceeding of the court, was for rental of $2 per acre payable quarterly in advance? * * * A. As well as I remember. I asked the county court if I could lease the land for $100 rental payable in advance.

"Q. Was that Leroy Archer's or Thos. J. Archer's? A. Both of them.

"Q. You got Spillers to draw the contracts, and they were both drawn alike? A. Yes, sir.

"Q. It was to be $100 a month in both cases? A. Yes, sir."

This seems to be all of the testimony which was offered tending to support the issue of mistake. It does not appear that the trial court committed prejudicial error in the rulings complained of thereon. Under the decisions of this court, where a party complains of the rejection of evidence, it is necessary for him to show in the record the substance of what the evidence would have been in order that this court may determine whether material error was committed. Turner et al. v. Moore, 34 Okla. 1, 127 Pac. 487. The refusal of the court to permit a witness to answer a competent question is not reversible error if subsequently the witness has been permitted to answer the same, or substantially the same question. Stewart v. Commonwealth Nat. Bank, 29 Okla. 754, 119 Pac. 216.

There is no merit in the contention that the lease was void for the want of mutuality, and hence the assignee could not be held liable for the payments stipulated to be made for delay in commencing a well: the case of Brown v. Wilson 58 Okla. 392, 160 Pac. 94, L. R. A. 1917B, 1184, relied on in support of the contention, having been overruled. Rich v. Doneghey, 71 Okla. 204, 177 Pac. 86.

We adhere to the views expressed in the former opinion on the questions therein discussed.

The petition for rehearing is denied.