## OKLAHOMA PETROLEUM & GASOLINE CO. v. WINSHIP.

No. 11271—Opinion Filed July 19, 1921.

Rehearing Denied Sept. 27, 1921.

(Syllabus.)

**1. Fraud—Essentials of Actionable Fraud.**

Fraud is a fact to be established by evidence, as any other fact. The general rule is that before fraud can be established it must be shown that a material representation has been made; that it was false; that when it was made the speaker knew it was untrue, or that it was made recklessly, without knowledge of its truth and as a positive assertion; that it was made with the intention that it should be acted upon by the one to whom it was made; that it was so acted upon by reason of the reliance placed upon it; and that damage or injury resulted thereby.

**2. Appeal and Error — Record—Excluded Evidence.**

In order that this court may consider assignments of error relating to the exclusion of evidence, there must be a showing in the record as to what the excluded evidence would have been before the court can say that there was reversible error in the ruling.

**3. Bailment—Effect of Express Contract.**

Where there is an express contract of bailment, the terms thereof control, as the parties are entitled to impose upon each other any terms they may choose, and may abridge, qualify, or supersede the obligations which otherwise would arise from the bailment by implication of law.

Error from District Court, Tulsa County; Owen Owen, Judge.

Action by R. D. Winship, doing business under the name R. D. Winship & Company, against Oklahoma Petroleum & Gasoline Company, a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

Aby & Tucker, for plaintiff in error.

Davidson & Williams, for defendant in error.

NICHOLSON, J. This action was instituted in the district court of Tulsa county, by the defendant in error, as plaintiff below, against the plaintiff in error, as defendant below, to recover rental on 30 railroad tank cars. We will hereafter refer to the parties as they appeared in the trial court.

The plaintiff sought to recover of the defendant the sum of $4,500, with interest thereon at the rate of 6 per cent. per annum from May 2, 1917, subject to a credit of $600 paid May 2, 1917; the sum of $4,500, with interest thereon at the rate of 6 per cent. per annum from June 2, 1917, the sum of $4,500 with interest thereon at the rate of 6 per cent. per annum from July 2, 1917, and the sum of $2,459.40, with interest thereon at the rate of 6 per cent. per annum from August 1, 1917, upon a contract in writing, a copy of which is as follows:

"April 2nd, 1917.
"Oklahoma Petroleum & Gasoline Co.,
"Tulsa, Okla.
"Gentlemen:

"This agreement made this 2nd day of April, 1917, between R. D. Winship and Company, Chicago, Illinois, party of the first part and Oklahoma Petroleum & Gasoline Co. Tulsa, Oklahoma, party of the second part, witnesseth:

"That the party of the first part agrees to let and hereby does let to the party of the second part, and party of the second part agrees to take from party of the first part, thirty (30) S.T.L. tank cars approximately eight thousand (8,000) gallons, sixty thousand (60,000) pounds capacity, equipped with safety valves for a term of four months from and after April 2nd, 1917, until and including July 31st, 1917, for the sum of one hundred and fifty dollars ($150.00) per car per month, payable in advance at the General Office of the first part, Chicago, Illinois, on or before noon of the 2nd day of each and every month of said term commencing with April 2nd, 1917.

"Upon delivery of cars to party of the second part, by party of the first part, after April 2nd, 1917, a deduction from the above rental shall be made at the rate of one hundred and fifty dollars ($150.00) per car per month, computed from April 2nd, 1917, until the delivery thereof, and for delay in redelivering cars to lessor at the term of this lease, an additional rental shall be paid for the term covered by such delays, for a period of five (5) days, at the same rate one hundred and fifty dollars ($150.00) per car per month, and shall be paid at the rate of ten ($10.00) per car per day.

"Party of the first part covenants and agrees to deliver the cars to the party of the second part on the tracks of the first party at Union Stock Yards, Chicago, Illinois, under Master Car Builders' Rules of Interchange, and the acceptance of cars by party of the second part shall be considered as their acknowledgment that the cars were fit and suitable for the use and purpose for which they are rented and were in condition satisfactory to them, as regards repairs, cleanliness and otherwise, and at the expiration of the contract, party of the second part agrees to return cars to party of the first part on their tracks at Union Stock Yards, Chicago; Illinois, or other convenient place to party of the first part providing it can be accomplished without any additional expense to either the lessor or lessee, free from any demurrage, switching or excess empty mileage charges, which shall have, or later develop to have accrued, during the term of this agreement, clean, and interchangeable condition under Master Car Builders' Rules. It is understood that clean, or cleanliness as above used, shall mean cars to be thoroughly emptied, squegged, and

"This contract subject to following provisions:

"1. First party agrees to pay for repairs chargeable to owner under M. C. B. Rules, other expenses of maintenance to be borne by second party.

"2. First party shall in no wise be responsible for the commodity loaded into or moved in said cars.

"3. Party of second part shall not load in said cars any commodity that will be detrimental, or in any way damage cars, such as pitch, asphalt, coal tar, sulphuric acid and other corrosive acids, creosote, and like commodities. Party of the second part covenants and agrees to hold party of the first part harmless and indemnified against any and all damages occasioned by such loading.

"4. That the said party of the second part shall be credited with all mileage earned, and collected on above mentioned cars during the life of this agreement, provided the second party shall have furnished first party with prompt reports of the forwarding and receipts of cars.

"5. Second party assumes responsibility and will make payment to the first party for all empty mileage in excess of mileage made by loaded cars on all roads over which cars are moved during the life of this agreement, at current tariff rates.

"6. Second party covenants and agrees not to load cars covered by this agreement in excess of sixty-six thousand (66,000) pounds and assumes all responsibility for damage resulting from loading cars in excess of this capacity.

"7. If rent is not paid in advance, as provided for herein, first party may at its option cancel . this agreement and order the return of the cars.

"8. This agreement shall be binding upon the successors or legal representatives of the parties hereto, but shall not be assigned without the written consent of the first party.

"April 2nd, 1917.

"R. D. Winship & Company.

"Oklahoma Petroleum & Gasoline Co.

"By Chas. W. Grimes, Vice President."

The defendant filed answer, admitting the execution of said contract and pleading, in substance, that in negotiating for the cars in question it notified the plaintiff the purpose for which said cars would be used,' if leased, would be for the transportation of gasoline from Oklahoma to various parts of the United States, and that it would be compelled to use said cars under the rules and regulations of the Interstate Commerce Commission of the United States; that upon receipt of the contract sued upon from said plaintiff, and on April 4, 1917, the defendant was not willing to sign the same for the reason that it contained the following provisions:

"Party of the first part covenants and agrees to deliver the cars to the party of the second part on the tracks of the first party at Union Stock Yards, Chicago, Illinois, under Master Car Builders' rules of interchange and the acceptance of cars by party of the second part shall be considered as their acknowledgement that the cars were fit and suitable for the use and purposes for which they are rented and were in condition satisfactory to them, as regards repairs, cleanliness and otherwise, * * *

"First party shall in no wise be responsible for the commodity loaded into or moved in said cars."

—That the defendant had not in the city of Chicago a representative to make an inspection and examination of said tank cars, and could not inspect said cars on the track of the plaintiff at that place; that said plaintiff knew that said cars would be accepted and used by said defendant in the transportation of gasoline in interstate commerce without examination or inspection by it, regardless of the provisions of said contract, and knew that said defendant would depend upon said plaintiff to truthfully state to it the actual condition of said cars, and that said defendant was not willing to sign the proposed contract until said plaintiff gave to it assurance that the cars then being prepared to be delivered to said defendant complied with the Master Car Builders' rules for use in gasoline service, and that said defendant notified said plaintiff that it would execute such contract regardless of the provisions hereinbefore set forth, to which it objected, upon the giving of such assurance; that a portion of such notice and demand is as follows:

"Western Union Telegram,

April 4, 1917.

"R. D. Winship & Company,

"Webster Building,

"Chicago, Illinois.

"Contract thirty tanks received and acceptable. Will sign same and mail you check day we are assured cars comply with Master Car Builders' rules for use in casinghead gasoline service. Can you arrange for this assurance and inspection.

"Okla. Petroleum & Gasoline Co."

—That thereupon, said plaintiff, knowing that said defendant had no means of making examination at Chicago, and in order to induce the defendant to sign the contract so offered and presented, falsely, fraudulently, willfully, and wrongfully stated and represented to said defendant that all of the tank cars which were being prepared for use by said defendant complied in detail with all the requirements of the Master Car Builders' rules for use in the transportation of gasoline in tank cars on the railroads of the United States; that said cars were all steel; that they tested 60 pounds pressure per square inch without leakage; that the cars were equipped with standard safety valves and that six of said cars were all cleaned and prepared to move gasoline; that a portion of the statements, assurances, and representations were in writing and reads as follows:

"Chicago, Ills. April 5.

"Oklahoma Pet. & Gas Co.,

"Tulsa, Okla.

"Telegram fourth. The thirty tanks being prepared are all steel, test sixty pounds pressure, equipped with standard safety valves six of them all cleaned ready to move. Gasoline was loaded in these cars from California east last summer. What other requirements are necessary.

"R. D. Winship & Co."

—That said representations, assurances, and statements so made by said plaintiff caused said defendant to sign said contract; that under and by virtue of said contract and the assurances, agreements, and statements of said plaintiff, plaintiff warranted said cars to be of such condition and of such strength as to satisfy the Master Car Builders' rules with reference to the inspection and condition of the tank cars to be used in the moving of gasoline in interstate commerce, and that said cars were reasonably suited for the purpose for which they were to be used; that the statements and representations so made by said plaintiff that the cars set apart to be used by said defendant were then clean and ready to be used in the transportation of gasoline, that they complied with the requirements of the Master Car Builders' rules for use in gasoline service, that they were all steel and tested 60 pounds pressure per square inch without leakage and were equipped with standard safety valves, were false, and were fraudulently made for the purpose of inducing said defendant to sign said contract; that said cars did not comply with the Master Car Builders' rules, and said cars and all of them did not test 60 pounds pressure per square inch without leakage; that all of them were leaky; that a large portion of the caps and domecovers were dirty, worn, and of improper size, and were entirely unfit for use in the transportation of gasoline; that a large portion of the valves used in said cars were worn and did not comply with the requirements of standard safety valves and with the rules of the Master Car Builders; that said cars were not properly calked so as to test the pressure above mentioned and that the seams of said cars leaked gasoline at a pressure much below the pressure of 60 pounds per square inch, all in violation of the Master Car Builders' rules, and the rules of the Interstate Commerce Commission; that it attached to said answer as exhibits, copies of the rules of the Master Car Builders and the Interstate Commerce Commission.

It is further averred that the defects in said cars were latent and of such a nature that defendant could not discover said leaks and defects until the actual employment of said cars in the transportation of gasoline; that immediately upon the discovery of the condition of said cars the defendant was compelled to and did remove therefrom the gasoline being transported therein; and notified plaintiff of this condition, and that defendant would be unable to use them, and delivered them back to said plaintiff at the times mentioned in a schedule attached to said answer as exhibit "E."

It is further averred that the plaintiff is entitled to receive from the defendant rental at the rate of $150 per month for the time such cars were used, less the amount paid thereon by said defendant and less the damages suffered by said defendant; that the defendant paid the plaintiff the sum of $5,100 as rental for said cars, and is indebted to said plaintiff in the sum of $570, which should be deducted from the amount of damages sustained by the defendant; and by way of counterclaim pleaded damages because of loss of, and damage to, gasoline, loss of time and repairs upon said cars, in the sum of $3,950.-40, from which was deducted the sum of $570, leaving a balance of $3,380.40, for which it prayed judgment. To this answer, a reply consisting of a general denial was filed.

After the evidence of the parties had been introduced, counsel entered into the following stipulation:

"Stipulation.

"It is stipulated by and between the plaintiff and the defendant in the above entitled cause, that the rent from April 2nd, 1917, to May 2nd, 1917, on the thirty cars in controversy amounting to forty-five hundred dollars ($4,500), was paid, and is the same forty-five hundred dollars ($4,500) with which the defendant is credited in the petition.

"It is further stipulated that the rent from April 2nd, 1917, to June 2nd, 1917, on the thirty cars in controversy, amounting to forty-five hundred dollars ($4,500), has been paid as follows: Six hundred dollars ($600) paid May 2nd, 1917, and thirty-two hundred dollars ($3,200) which will hereinafter be more specifically described. Said six hundred dollars ($600) is the six hundred dollars ($600) credit named in plaintiff's petition; said thirty-two hundred dollars ($3,200) is the amount to be deducted from the rent for the delay in the delivery of the cars, the aggregate delay of all the cars being six hundred and forty (640) days, the deduction

to be made at five dollars ($5.00) per day. Said six hundred dollars ($600) when added to said thirty-two hundred dollars ($3,200), makes thirty-eight hundred dollars $3,800), and said thirty-eight hundred dollars ($3,800) when deducted from the forty-five hundred dollars ($4,500) rent due May 2nd, 1917, leaves a balance of seven hundred dollars ($700) due on the rent from May 2nd, 1917, to June 2nd, 1917, allowing the credits as above set forth, to wit,. the credit of six hundred dollars ($600) and the credit of thirty-two hundred dollars ($3,200).

"It is further stipulated that the plaintiff is entitled to said seven hundred dollars ($700) with interest thereon from the 2nd day of May, 1917, to September 12th, 1919.

"It is further stipulated that the plaintiff is entitled for the rent from June 2nd, 1917, to July 2nd, 1917, with interest thereon from June 2nd, 1917, until September 12th, 1919.

"It is further stipulated that the plaintiff is entitled to the further rent from July 2nd, 1917, up to and including July 31st, 1917, in the sum of forty-five hundred dollars ($4,500). with interest thereon at the rate of six per cent. per annum from July 2nd, 1917, to September 12th, 1919.

"It is further stipulated that the plaintiff is entitled to the further sum of two thousand six hundred and forty-three dollars and eighty cents ($2,643.80) excess empty mileage.

"It is further stipulated that the total amount of the plaintiff's valid and subsisting claim on September 12th, 1919, after deducting the credits hereinabove set forth in this stipulation, amounts in the aggregate of thirteen thousand six hundred and fifty dollars and forty-seven cents ($13,650.47).

"It is further stipulated that the defendant is entitled to credit of twelve hundred and thirty-four dollars and fifty cents ($1,234.50) as of September 12th, 1919, for excess empty mileage.

"It is further stipulated that defendant is entitled to a credit of six hundred and thirteen dollars and forty-nine cents ($613.49) as of June 15th, 1917, for earned mileage, with interest thereon at the rate of six per cent. per annum from June 15th, 1917, until September 12th, 1919. The aggregate amount of the aforesaid two credits of six hundred and thirteen dollars and forty-nine cents ($613.49) with interest thereon to the 12th day of September, 1919, and the twelve hundred and thirty-four dollars and fifty cents ($1,234.50) is nineteen hundred and thirty dollars and fifty-one cents ($1,930.51), which constitutes a valid and subsisting credit as of September 12th, 1919, on the aforesaid plaintiff's indebtedness on September 12th, 1919.

"It is further stipulated that the amounts of indebtedness and credits set forth in this stipulation thus far are not to preclude the right to recover, or to have credited, such other sums for other things as either side may be entitled to under the laws and facts in this case. By this stipulation neither side waives any exception or right involved in this case; the thing stipulated being the amounts agreed upon as established by plaintiff and defendant in this case.

"It is further stipulated that the excess empty mileage for which the defendant is given credit in this stipulation and which credit amounts to twelve hundred and thirty-four dollars and fifty cents ($1,234.50), as hereinabove set forth, is based upon the following: Sixteen cars from Woodriver to Tulsa, the distance from Woodriver to Tulsa being seven hundred and fifty miles; one car from Muskogee to Tulsa, the distance from Muskogee to Tulsa being fifty-two miles; four cars from Cleveland, Oklahoma, to Tulsa, the distance from Cleveland to Tulsa being thirty-three miles; two cars from Chelsea to Tulsa, Oklahoma, the distance from Chelsea to Tulsa being thirty-eight miles; five cars from Glenpool to Tulsa, Oklahoma, the distance from Glenpool to Tulsa being seventeen miles.

"It is further stipulated that the court may instruct the jury in so far as the matters stipulated in this stipulation are concerned, upon the basis of the sums of money set forth in this stipulation.

"It is understood and agreed between the parties to the following stipulation that the same shall be interpreted in the light of the following:

"That the stipulation as to amounts hereinabove delineated are for the purpose of convenient instruction of the jury by the court and are the correct figures in the light of the theory adopted by the court for the submission of the same to the jury.

"It is understood that by agreeing to the foregoing amounts in such light, the defendant does not waive objection to the correctness of the items and amounts stated as due the plaintiff, and it is further understood that the plaintiff does not waive objection to the correctness of the items and amounts stated as due the defendant from the plaintiff, and it is also understood that the defendant excepts and protests that the theory upon which the case is submitted to the jury is erroneous.

"Dated this 12th day of September, 1919."

Thereupon the court instructed the jury as follows:

"The plaintiff and defendant, in view of the theory of law in this case taken by the court, have agreed upon certain figures and entered into a certain stipulation.

"In view of this stipulation, the court directs you to find a verdict for the plaintiff for $11,719.96, less $1,360.00, the amount received by the plaintiff from the Midland Petroleum Company and for which the defendant is entitled to credit, with interest to date, amounting to $176.-12, or a total of $1,536.12, which sum, deducted from $11,719.96, leaves a total of $10,183.84. You are further instructed that the defendant is entitled to a credit at the rate of $150.00 per month for all the time, if any you find, that any of the tank cars were necessarily in the repair shops for the making of necessary repair, which sum, if any you find, shall be deducted from the total of $10,183.84, and return your verdict into court."

The jury returned a verdict in favor of the plaintiff in the sum of $9,978.84, upon which judgment was entered.

The defendant complains of the action of the trial court in giving the instruction above set out and insists that there was evidence of fraud sufficient to take the case to the jury. If there was evidence of fraud sufficient to take the case to the jury, the court erred in giving the instruction complained of, and in refusing to give instructions Nos. 5, 6, and 7, requested by the defendant. While, on the other hand, if the defendant failed to establish the essential elements of fraud on the part of the plaintiff in procuring the contract sued upon, the court was right in proceeding as it did.

Fraud amounting to misrepresentation is defined as follows:

"Fraud is a fact to be established by evidence, as any other fact. The general rule is that before fraud can be established it must be shown that a material representation has been made; that it was false; that when it was made the speaker knew it was untrue, or that it was made recklessly without the knowledge of its truth and as a positive assertion; that it was made with the intention that it should be acted upon by the one to whom it was made; that is was so acted upon by reason of the reliance placed upon it; and that damage or injury resulted thereby." Chicago, R. I. & P. Ry. Co. v. Penix, 61 Okla. 4, 159 Pac. 1141; St. L. & S. F. Ry. Co. v. Reed, 37 Okla. 350, 132 Pac. 355; 20 Cyc. 13.

In order to entitle the defendant to the relief sought, it must have brought its case within the above rule. C. W. Grimes, a witness on behalf of the defendant, testified that he was attorney for, and vice president of, the defendant, during the year 1917, and that he executed the contract sued upon for and on behalf of the defendant; that he received the contract from the plaintiff, through the mails, and upon receipt thereof, he sent to the plaintiff the following telegram:

"April 4, 1917.

"R. D. Winship & Company,
"Webster Building,
"Chicago, Illinois.

"Contract thirty tanks cars received and acceptable. Will sign same and mail you check day we are assured cars comply with Master Car Builders' rules for use in casinghead gasoline service. Can you arrange for this assurance and inspection.

"Okla. Petroleum & Gasoline Co."

—and in response thereto, received from the plaintiff a telegram reading as follows:

"April 5, 1917.

"Oklahoma Petroleum & Gaso. Co.,
"Tulsa, Okla.

"Telegram fourth. The thirty tank cars prepared are all steel, test sixty pounds pressure, equipped with standard safety valves six of them all cleaned and ready to move. Gasoline was loaded in these cars from California east last summer. What other requirements are necessary.

"R. D. Winship & Co."

—and on April 6, 1917, the defendant received from the plaintiff a further telegram reading as follows:

"April 6, 1917.

"Okla. Pet. & Gaso. Co.
"Tulsa, Okla.

"Standard Oil Co. here tell me they are furnishing you tanks sixty pounds pressure safety valves set twenty-five pounds. Tanks we are giving you have these same specifications six ready to move answer.

"R. D. Winship Co."

But the witness was unable to say whether the last telegram was received before or after the contract was entered into, and he did not remember whether this telegram had any influence in inducing him to sign the contract. On motion of the plaintiff said telegram was stricken from the record. The witness testified that the matter contained in the telegram of April 5, 1917, influenced him in signing said contract, and that he would

not have signed the contract had it not been for the assurance contained therein. The witness was then asked this question:

"Mr. Grimes, will you state to the court and jury what it was in the contract that was submitted to you that made it such a contract that you would not sign except upon the assurance contained in the telegram?"

—to which counsel for plaintiff objected on the ground that it was incompetent, irrelevant, and immaterial and a self-serving declaration. This objection was by the court sustained. The defendant excepted, and assigns this ruling of the court as error, but the record does not show what the evidence would have been if it had been admitted, and we are unable to say that the court erred in sustaining the objection.

It is well established in this jurisdiction that when a party complains of the rejection of evidence, it is necessary for him to show in the record the substance of what the evidence would have been, in order that the court may determine whether material error has been committed. Hutchings v. Cobble, 30 Okla. 581, 120 Pac. 1013; Steward v. Commonwealth National Bank, 29 Okla. 754, 119 Pac. 216; Turner et al. v. Moore, 34 Okla. 1, 127 Pac. 487; Evans v. Smith, 50 Okla. 285, 150 Pac. 1096; Ardizonne v. Archer, 71 Oklahoma, 177 Pac. 554; Gross v. Lincoln, 81 Okla. 87, 196 Pac. 960.

No complaint is made of the action of the court in striking from the record the telegram of April 6, 1917, and in view of the evidence of the witness no valid complaint could be made. The representations contained in this telegram were material, and if they were untrue, and had been acted upon by the defendant, might have entitled it to relief. But from the evidence of the witness Grimes, it is evident that this telegram did not influence him in executing the contract. Therefore, the only evidence of any representations made by the plaintiff is the telegram of April 5, 1917, and the evidence on behalf of the defendant fails to show that the statements contained therein were false.

By the terms of the contract, the acceptance of the cars by the defendant should be considered as its acknowledgment that the cars were fit and suitable for the use and purpose for which they were rented, and were in a condition

satisfactory to the defendant in regard to repairs, cleanliness, and otherwise, and as there is no evidence that the defendant was by any act of the plaintiff prevented from making an inspection and examination of the cars before accepting them, the defendant must be held bound by the terms of said contract.

The evidence shows that some of the cars leaked, and it was necessary to calk the seams; that the valves of some of them were defective and were repaired or substituted with new ones, but by the terms of the contract the plaintiff agreed to pay for repairs chargeable to the owner under Master Car Builders' rules and the money expended by the defendant for repairs was by the court charged to the plaintiff. The evidence further shows that the defendant suffered the loss of some gasoline by reason of leakage, and that some gasoline was discolored because of the substance that had formerly been loaded into the cars, but the contract expressly provided that the plaintiff should in no wise be responsible for the commodity loaded into or moved in said cars.

The defendant next contends that the plaintiff impliedly warranted that the cars were of a kind and character and in a condition to be used as contemplated by the contract, and is liable for all damages occasioned by the faults or defects of said cars regardless of the question of fraud in procuring said contract, and in support of this contention cites section 1136, Rev. Laws 1910, Williamson v. Phillipoff (Fla.) 64 South. 269, 3 R. C. L. 138, 6 C. J. 1117, and Moriarty v. Porter, 49 N. Y. Supp. 1107; but these authorities have no application to a case like the one at bar, where the rights, duties, and liabilities of the parties are fixed by express contract. The rule is well settled that where there is an express contract of bailment, the terms thereof control, as the parties are entitled to impose upon each other any terms they may choose and may abridge, qualify, or supersede the obligations which otherwise would arise from the bailment by implication of law. 3 R. C. L. 105; 6 C. J. 1110.

The parties having by their express contract agreed that acceptance of the cars by the defendant should be considered as an acknowledgment that the cars were fit and suitable for the purpose for which they were rented and were in a condition satisfactory to the defendant as regards repairs, cleanliness, and other-

wise, and that the plaintiff should in no wise be responsible for the commodity loaded into or removed in said cars, and the defendant having accepted the cars under the terms of said contract. is bound thereby and cannot be heard to invoke the rule of implied warranties.

The defendant having based its defense upon the fraud of the plaintiff in procuring the contract, and having failed in its proof, the plaintiff was entitled to recover; and with the aforesaid stipulation of the parties on file, the court did not err in giving the instruction complained of, and properly refused the instructions requested by the defendant.

The judgment of the trial court is therefore affirmed.

PITCHFORD, V. C. J., KANE, JOHNSON, and ELTING, JJ.. concur.