**BISHOP et al. v. PRAIRIE OIL & GAS CO. et al.**

No. 12772—Opinion Filed Jan. 22, 1924.

(Syllabus.)

1. **Guardian and Ward—Execution of Oil Lease by Guardian — Validity—Competitive Bidding.**

Where a guardian presents to the county court a petition for authority to sell an oil and gas lease on his ward's land, and an order is made authorizing the guardian to offer a lease at public auction, and the guardian in compliance with such order does offer the lease at public auction and sells the same to the highest bidder and makes his return to the county court, whereupon an order is made by the court authorizing the guardian to execute a lease to the highest bidder for the amount of his bid, the lease executed in compliance with the order so made is not invalid as directing the guardian to execute a lease to a designated person for a designated price, as the lease was executed after a full opportunity had been given for competitive bidding.

2. **Same—Proceedings in Court—Presumption of Regularity.**

Where a guardian, who has been duly and legally appointed by a competent court, makes a lease of the premises of his ward, in the absence of proof to the contrary the court will presume that all necessary legal steps have been taken, and that the guardian has secured all necessary orders to authorize him to make such lease, and the burden is upon the party attacking the validity of the lease to establish the facts necessary to show its illegality.

3. **Same—Approval of Lease by Court.**

Where a petition has been presented to the county judge by a guardian asking for authority to lease the land of his minor ward for oil and gas, and an order has been entered in the case authorizing and directing the guardian to offer a lease on the lands to the highest bidder, specifying the character and terms of the lease to be offered, or if the lease had been offered after public notice, which specified the charac-ter and terms of the lease, and a sale had been made to the highest bidder and a return made by the guardian, reciting such facts and the character and terms of the lease, and the court thereupon ordered the execution of a lease, a lease executed in compliance with this order and in compliance with the terms approved by the court is valid, although the lease was not present-ed to the county judge for his approval after its execution.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by Linda Bishop, nee Tyner, and another against the Prairie Oil & Gas Company and another. Judgment for defendants and plaintiffs bring error. Affirmed.

E. Robitaille and C. W. Butterworth, for plaintiffs in error.

T. J. Flannelly, Paul B. Mason, and West, Sherman, Davidson & Moore, for defendants in error.

COCHRAN, J. The plaintiffs in error filed this suit for the purpose of canceling an oil and gas lease executed on June 5, 1909, by John Tyner, guardian of Linda Tyner, and which lease is now owned by the Prairie Oil & Gas Company. A demurrer was sustained to the petition and judgment rendered for the defendant. It was alleged in the petition that the lease contract in con-troversy was executed by John Tyner, legal guardian of Linda Tyner, on June 5, 1909, in compliance with an order in the matter of the guardianship of Linda Tyner by the county judge of Tulsa county on June 5, 1909. A copy of the order was attached to the petition as an exhibit, and, among other things, contained the following statement:

"This cause coming on for hearing as to the reasonableness of a bid of $3 per acre bonus for an oil and gas mining lease on the following described land, to wit: The N. ½ of the southwest quarter of section 25, town-ship 22 N., range 12 E., the same being the allotment of Boshyhead Tyner, deceased, and

Linda Tyner being the remainderman, and a minor, and said oil and gas mining lease having been cried off in front of the court house of Tulsa county on the 5th day of June, 1909, as per order and notices duly made, filed, posted and published, and H. Steinberger being the only bidder, others refusing to bid but being present. The court having heard the evidence as above set forth and being fully advised in the premises, it is ordered and decreed that the bonus of three dollars an acre on the N. ½ of S. W. ¼ of section 25, township 22 N., range 12 E., is a good and sufficient bonus for an oil and gas mining lease thereon, and the guardian of said minor is hereby ordered to execute an oil and gas mining lease on the said described land to H. Steinberger for a bonus of $3.00 per acre with the provision in said lease requiring said lessee, his heirs or assigns, to drill a well within one year from this date, or failure to do so to work a forfeiture of said lease."

There are only two questions presented in the brief of the plaintiffs in error, to wit: (1) Can a county court make a valid order requiring the guardian of a minor to sell an oil and gas lease on his ward's lands to a designated person at a designated price? and (2) is it necessary to the validity of an oil and gas lease, made by the guardian of a minor, under an order of a judge of a county court, that said lease, after execution by the guardian, be submitted to county court, and by the judge of said court approved?

As to the first proposition, the plaintiffs in error rely on the following language contained in Winona Oil Co. v. Barnes, 83 Okla. 248. 200 Pac. 981:

"Neither the statutes nor Constitution of the state confers upon the county courts of this state power or authority to order and direct the guardian to execute an oil and gas lease upon the lands of the ward to a certain person, for a designated sum, thereby preventing competitive bidding and preventing all other persons from participating at the sale or bidding at the sale."

The Winona Oil Company Case dealt with a lease executed after the adoption of rule 9 of the Supreme Court, (47 Okla. xvi), and it is not necessarily applicable to the facts in the instant case, as this lease was executed prior to the adoption of rule 9. Should this same rule be applied in the instant case, however, this lease would not be void, as the order of the court, which was attached to plaintiff's petition as an exhibit, recites that the lease was ordered at public auction and opportunity given for competitive bidding, after due notice had been given. While the order of the court designated the person

to whom the same should be executed and the amount of the bonus which should be accepted by the guardian, the order was made after the guardian had negotiated the lease and had given an opportunity for public competitive bidding, and the order made by the court simply approved the action of the guardian and evidenced the consent of the county judge to the execution of a lease in accordance with the agreements and negotiations made by the guardian. To support their second contention, the plaintiffs in error cite Duff v. Keaton, 33 Okla. 92, 124 Pac. 291.; Melton v. Cherokee Oil & Gas Co., 67 Okla. 247, 170 Pac. 691; Winona Oil Co. v. Barnes, supra, and Ardizonne v. Archer, 71 Oklahoma, 160 Pac. 446.

The plaintiffs in error contend that, although this oil and gas lease was executed by the guardian in compliance with the order of the county judge authorizing the execution of the same, and after notice had been given that the oil and gas lease would be offered at public auction and the lessee had bid the same in at this public auction and a return of the proceedings had been made to the county court, the lease is void, because no order of approval was made or entered after the lease contract had been executed by the guardian. The language contained in Duff v. Keaton, supra, upon which the plaintiffs in error rely, is as follows:

"A guardian has no authority to lease the lands of his ward, or enter into a license or contract covering the same, for oil and gas mining purposes without the direction and approval of the probate court. * * * The rule obtaining at common law for the guardian to lease the lands of his ward without the approval of the court is thereby changed. * * * But we have heretofore reached the conclusion that the rule existing at common law, by which the guardian was authorized to lease the lands of the ward for a number of years without the approval of the probate court, has been changed by section 5513, supra, and that by said section said leases in order to be valid must be first approved by the probate court."

In Ardizonne v. Archer, supra, which is also relied upon by the plaintiffs in error, the court said:

"It was established in this jurisdiction, by Duff v. Keaton, 33 Okla. 97, 124 Pac. 291, 42 L. R. A. (N. S.) 472, that the guardian of a minor was without power to make an oil and gas mining lease, covering the ward's property, without the approval of the county court having jurisdiction of the estate of the minor. This being true, we think it clearly appears that, having made the lease and the county court having approved it, the guardian alone is absolutely without power to change or modify the terms of the

lease, or bind his ward by his statements in regard to what the terms of the lease were or should be. Whether it be taken that the county court or the guardian is the true party to such a contract, it cannot be denied that the assent of the county court is an essential element to the validity thereof."

In Melton v. Cherokee Oil & Gas Co., supra, the court quotes with approval the following definition of approval:

"To give 'approval' is in its essential and most obvious meaning to confirm, ratify, sanction, or consent to some act or thing done by another."

It is very clear from the foregoing authority and from section 5513, Comp. Laws 1909 (sec. 1458, Comp. Stat. 1921), that a guardian has no authority to lease lands of his ward for oil and gas mining purposes without the approval of the probate court. Section 5513, Comp. Laws 1909, which was held in Duff v. Keaton to be the law controlling the execution of an oil and gas lease by a guardian, provides as follows:

"The county court, on the application of a guardian or any person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales, and any other of his ward's money in his hands, in real estate, or in any other manner most to the interest of all concerned therein; and the county court may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require."

The question to be determined is what constitutes an approval by the county court; the contention of the plaintiffs in error being that it is necessary that the lease contract, after it is executed, shall be presented to the county court and be approved by him. It is true that when on order authorizing the execution of an oil and gas lease is made, and the guardian in compliance with this order executes a lease contract and reports his action to the county court and presents to the court the lease executed by him, and an order of approval is entered, such action on the part of the county court is an approval of the lease contract. According to the definition of approval in Melton v. Cherokee Oil & Gas Co., supra, the county court gives its approval when it gives its sanction or consent to the act of the guardian, as well as when it confirms and perfects an act of the guardian.

In the instant case, there was no allegation that the guardian did not file a petition for authority to execute an oil and gas

lease on the property of his ward or that the order of the court authorizing this lease to be offered at public outcry did not prescribe the character and terms of the lease to be offered, and, in the absence of such allegations, the presumption is that all of the necessary legal steps were taken by the guardian in order to authorize him to execute the lease which was executed.

In Norton v. Stroud State Bank, 17 Okla. 295, 87 Pac. 848, the court in the syllabus stated:

"Where a guardian, who has been duly and legally appointed by a competent court having jurisdiction of the subject. makes a lease of the premises of his ward, in the absence of proof to the contrary the court will presume that all necessary steps have been taken, and that the guardian has secured all necessary orders to authorize him to make such lease, and the burden is upon the party attacking the validity of the lease to establish the facts necessary to show its illegality."

If a petition had been presented to the county judge asking for authority to lease the land of the minor for oil and gas and an order had been entered in the case authorizing and directing the guardian to offer a lease on said lands to the highest bidder, specifying the character and terms of the lease to be offered, or. if the lease had been offered after public notice which specified the character and terms of the lease and sale made to the highest bidder and return made by the guardian reciting these facts, and the court thereupon ordered the execution of the lease which is in controversy, such order constituted an approval of the lease. The lease which was thereafter executed, according to the decision in Ardizonne v. Archer, supra, must have been executed in compliance with the order of the court, and not otherwise; but, if so executed, the same had the approval of the county court, as it was executed with the sanction and consent of the county court. There would be no more reason why a lease contract so executed should be presented to the county court for approval. after its execution, than a guardian's sale had been confirmed and deed ordered executed by the court. Of course the presentation of the lease contract for approval after its execution is an additional guarantee to the purchaser that the lease so executed was in accordance with the orders of the court. The plaintiffs in error refer to the following language in Winona Oil Co. v. Barnes, supra:

"It was contemplated by the decision in the Duff v. Keaton Case, and the subsequent decision in this court where the question of

oil and gas mining leases was involved, and by rule 9, that the proceedings relative to the sale of an oil and gas lease should be by a petition, setting up jurisdictional facts, that would authorize the court to order a sale of an oil and gas mining lease upon the premises; second, a hearing upon said petition; third, an order of the court in proper cases authorizing the guardian to sell a lease; fourth, the advertising of said lease for sale, and the sale of said lease by the guardian in open court to the highest and best responsible bidder; and fifth, return of the sale and confirmation of the sale by the court."

There is no foundation for the contention that the lease contract must be presented to the court for approval after its execution, as the language used in that opinion is that there shall be "a return of sale and confirmation of the sale by the court", which is the very thing that was done in this case, a sale having been made at public auction and return made to the county court, and confirmation of such sale made by the court and a lease directed to be executed by the guardian.

It is our opinion that the order made by the county court in the instant case shows an approval of the oil and gas lease by the county court, and that the lease executed in compliance with that order is valid.

The judgment of the trial court is affirmed.

KENNAMER, HARRISON, MASON, and LYDICK, JJ., concur. McNEILL, J., concurs in conclusion.