## DUFF *et al.* v. KEATON *et al.*

No. 2089.   Opinion Filed May 14, 1912.

(124 Pac. 291.)

1.   **GUARDIAN AND WARD**—Oil and Gas Lease—Nature of Estate
—"Sale of Realty." A lease granting oil and gas mining priv-
ileges for a term of years is not a "sale of realty" as contem-
plated by section 5314, Comp. Laws 1909.

2.   **PROPERTY**—Guardian and Ward—Oil and Gas Lease—Nature of
Property—Sale by Guardian—"Personalty." A lease granting
oil and gas mining privileges for a term of years is a "chattel
real."
    (a)   A chattel real is "personalty."
    (b)   A lease for such purposes, made by the guardian of a
minor, permission of the court having first been obtained thereto,
and such lease having been approved and confirmed by the court,
though without the preliminary notices essential for the order
of sale and confirmation of the same in case of the sale of real
estate of minors by guardians, is valid against a collateral attack.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County;*
*W. L. Barnum, Judge.*

Action by Cedric Duff, a minor, by his mother, Evaline Duff,
as next friend, and by the latter in her own right, against Har-
wood Keaton, guardian, and another. Judgment for defendants,
and plaintiffs bring error. Affirmed.

*Eaton & Carter* and *Scothorn, Caldwell & McRill,* for plain-
tiffs in error.

*Geo. S. Ramsey* and *C. L. Thomas,* for defendants in error.

*J. B. Diggs, A. L. Beaty, John H. Kane, M. E. Michaelson,*
and *Henry McGraw, amici curiae.*

WILLIAMS, J. This proceeding in error is to review the
judgment in an action brought by Cedric Duff, a minor, by his
mother, Evaline Duff, as next friend, and the said Evaline Duff
in her own right, as next of kin to the said Cedric Duff, against

Harwood Keaton, as guardian of the said Cedric Duff's estate, and the Prairie Oil & Gas Company, a corporation, to enjoin a waste of said ward's estate, to have declared null and void and set aside a pretended oil and gas lease upon said ward's estate, and for an accounting and recovery for waste already committed. A demurrer was sustained to the plaintiffs' amended petition, and plaintiffs having elected to stand on same, a judgment dismissing the action and for costs was entered against them.

It is the contention of the plaintiffs in error that certain proceedings had in the county court of Okmulgee county, authorizing said oil and gas lease, are not merely irregular and erroneous, but absolutely void; that such invalidity is not made to appear by facts outside the record, but is shown and established upon the face of the record itself, being a sale of real estate by the guardian, in violation of the requirements of section 5314, Comp. Laws 1909; and that such sale can be approved by the county court only after certain preliminary requirements.

The petition for leave to lease the land of said ward for oil and gas mining purposes is, in part, as follows:

"Comes now Harwood Keaton and shows to the court: That he is the duly appointed, legally qualified, and acting guardian of the person and estate of Cedric Duff, a minor. That said minor is the owner of certain real estate located in Okmulgee county, Okla., and more particularly described as follows: * * * That said land was allotted to said minor by the Creek Nation, and Cedric Duff is duly enrolled upon the Creek freedmen roll. That said premises are situated in what is known as the oil and gas belt in the state of Oklahoma, and your petitioner believes that the same are valuable for oil and gas mining purposes. Your petitioner further shows to the court that neither he nor his said ward are able to develop said property for oil and gas because of lack of means necessary to drill and equip oil and gas wells; that wells have been drilled for oil and gas in the neighborhood of this land, and oil and gas have been discovered and are being produced in paying quantities, and unless your petitioner is authorized by this court to lease the lands of his ward to some person or company able to properly develop the premises for oil and gas and protect the interest of his ward, the estate will suffer waste and loss by drainage to wells which may be and are being drilled adjacent to the property herein described. Your petitioner

further shows that, if oil and gas are found in paying quantities on the above-described land, it will greatly enhance the value of his ward's estate, and the money which may be derived from the production of oil and gas from said premises is necessary for the proper education, maintenance, and support of his said ward. Wherefore, petitioner prays the court to make and enter an order herein directing him, as the guardian of said minor, to enter into an oil and gas mining lease with some responsible person or company in order that said premises may be developed for oil and gas, and the estate of said Cedric Duff protected."

On the same day that said petition was filed in said county court, the following order was made:

"This cause coming on to be heard upon this 24th day of December, 1908, on the duly verified petition of Harwood Keaton, who is the guardian of the person and estate of Cedric Duff, a minor, praying for permission and an order of court permitting and directing him, the guardian, to execute an oil and gas mining lease upon the following described premises of his ward, to wit, * * * and it being shown to the court that such action will be to the best interest of said ward, and that it is necessary to execute an oil and gas mining lease to some person or company which is able to properly develop said premises in order that the interest of said minor may be protected, and it being fully shown to the court that neither the guardian nor his ward have means sufficient to develop said premises for oil and gas, it is by the court ordered that said Harwood Keaton, guardian of the person and estate of Cedric Duff, a minor, be and is hereby directed and authorized to execute an oil and gas mining lease to some company or person responsible and able to develop said premises for oil and gas."

It is insisted by plaintiffs in error that said order is void for the reason that no compliance was made with sections 5503, 5504, and 5505, Comp. Laws 1909, by making an order directing the next of kin of said minor, or persons interested in said estate, to appear before said court at any time or place in such order specified, to show cause why an order should not be granted for the making of such oil and gas lease upon said estate, and without personal service or service by publication, and without any attempt at personal service or service by publication, of notice upon said plaintiff, Evaline Duff, as the next of kin of said ward, Cedric Duff, or upon any person interested in said ward's estate,

etc.; and further, for the reason that said order did not set forth and specify the terms upon which the said guardian should lease said premises for oil and gas mining purposes pursuant to sections 5316 and 5508, Comp. Laws 1909.

On December 24, 1908, the said guardian, pursuant to said order, but without any appraisement of said estate for oil and gas mining purposes ever having been made, pursuant to section 5318, Comp. Laws 1909, and without any notice of the time and place of a public sale of said. oil and gas mining lease on said ward's estate, pursuant to the provisions of section 5320, Comp. Laws 1909, made the following report as to his action in the premises to said court, to wit:

"Comes now Harwood Keaton and respectfully shows to the court that he, as guardian of the person and estate of Cedric Duff, a minor, acting under the direction of this court in an order made and entered on the 24th day of December, 1908, directing him, as such guardian, to execute an oil and gas mining lease on the premises of his ward to some person or company responsible and able to properly develop said premises for oil and gas and protect the interest of his ward, has on this day entered into an oil and gas mining lease with the Prairie Oil & Gas Company, a Kansas corporation; said lease continuing from this date to a.period ending December 1, 1926, and not extending beyond the minority of his ward. The conditions of said lease are that the lessee is to pay to the estate of the said minor a royalty of one-eighth of all oil produced and the sum of two hundred fifty ($250.00) dollars for each and every gas well drilled thereon, the product of which is marketed off the premises. The lessee pays, as a bonus for the execution of said lease, the sum of eighty ($80.00) dollars in cash, and if a well is not drilled within one year from the date of said lease the lease is to be null and void unless the lessee pays to the estate of said minor the sum of twenty-five cents per acre, semi-annually. Your petitioner further shows to the court that this is the best offer he has been able to secure for an oil and gas mining lease on these premises; that he has made diligent inquiry and knows that the Prairie Oil & Gas Company is financially able to develop said premises for oil and gas and is able to fully protect the interest of said minor in said premises, and believes it for the best interest of said minor that the court approve the lease executed by his guardian to the Prairie Oil & Gas Company, and prays the court that his action in so doing be in all things approved and confirmed by this court."

It is contended by counsel for plaintiffs in error that sections 5323 and 5324, Comp. Laws 1909, require the setting of a day for hearing such report and notice, etc., and that such was not done in this case.

On said report the court rendered the following order:

"Now on this 24th day of December, 1908, this cause coming on to be heard upon the report of the guardian filed herein showing that in pursuance of an order heretofore made and entered in this cause, directing him, as such guardian, to execute an oil and gas mining lease on the premises of his ward, to wit, * * * and said report showing that the orders of this court have been complied with, the court upon investigation finds: First. That the premises above described are in the oil and gas belt of the state of Oklahoma, and should be developed for oil and gas. Second. That neither the guardian nor his ward have means sufficient to develop said premises for oil and gas. Third. That the estate would suffer waste and loss if said premises are not developed for oil and gas. Fourth. That the bonus paid by the Prairie Oil & Gas Company is a reasonable bonus. Fifth. That the royalty agreed to be paid by said lessee is the royalty usually paid by responsible oil and gas operators in that territory. Sixth. That it is to the best interest of said minor that said lease be approved and confirmed by this court. The court further finds that the Prairie Oil & Gas Company, a Kansas corporation, the lessee, is responsible and financially able to develop said premises for oil and gas and is able to properly protect the interest of said minor in said premises. It is therefore by the court considered, ordered, and adjudged that the lease this day executed by Harwood Keaton, as guardian of the person and estate of Cedric Duff, a minor, to the Prairie Oil & Gas Company, a Kansas corporation, covering the above-described premises, be and the same is hereby approved and confirmed by this court."

Plaintiffs in error further contend that said order of confirmation is void for not complying with section 5323, Comp. Laws 1909, relative to confirming the sale of lands of minors. It is insisted by the plaintiffs in error that:

"An oil and gas lease which demises, grants, and lets, for a term of years, all of the oil deposits and natural gas in and under a particular tract of land, conveys a portion of the *corpus* of the estate, and is a sale of real estate within the meaning of the Probate Code of Oklahoma."

1. Is such a lease a sale as contemplated by section 5314, Comp. Laws 1909? When sections 1187, 1194, and 1195, Comp. Laws 1909, are considered together, it is obvious that a lease for a period of over one year, within the terms of said statutes, is not a conveyance of real estate. A lease for one year or for six months is an instrument relating to real property; section 95, *supra,* indicating that the Legislature did not understand a lease as conveying real estate or an interest therein, for that section expressly declares that no deed, mortgage, contract, bond, lease, or other instrument relating to real estate, other than a lease for a period not exceeding one year and accompanied by actual possession, shall be valid as against third persons unless acknowledged and recorded as therein provided.

Under the theory of the plaintiffs in error, the guardian cannot lease the lands of his ward for any term of years in excess of one year for agricultural, grazing, or commercial purposes, unless the guardian files a petition in court alleging that the income of the ward is insufficient to maintain or educate said ward, and such lease must be made or sold for the purpose of deriving funds with which to educate or maintain the ward, or alleging that such lease for any term over one year, for agricultural, grazing, or any other commercial purpose should be made for the benefit of the estate, for reinvestment, etc.

The statutes of this state are entirely lacking as to any specific provision for the procedure to be followed by the guardian in leasing the lands of his ward for agricultural or grazing or commercial purposes or for exploring for oil or gas.

By sections 12 and 13 of article 7 of the Constitution, jurisdiction of all probate matters is conferred upon the county court.

By section 5478, Comp. Laws 1909, it is provided that "every guardian appointed shall have the custody and care of the education of the minor; and the care and management of his estate, until such minor arrives at the age of majority, or marries, or until the guardian is legally discharged." In the following section the guardian is required, before his appointment becomes effective, to give bond to the minor conditioned that he will faithfully execute the duties of his trust according to law; it being

specially provided that the following conditions shall constitute a part of every such bond without being expressed therein: First. To make an inventory of all the estate, real and personal, of his ward that comes to his possession or knowledge, and to return the same within such time as the judge may order. Second. To dispose of and manage the estate according to law and for the best interest of the ward, and faithfully to discharge his trust in relation thereto, and also in relation to the care, custody, and education of the ward. Third. To render an account on oath of the property, estate, and moneys of the ward in his hands, and all proceeds or interests derived therefrom, and of the management and disposition of the same, within three months after his appointment, and at such other times as the court directs; and at the expiration of his trust to settle his accounts with the probate judge, or with the ward, if he be of full age, or his legal representatives, and to pay over and deliver all the estate, moneys, and effects remaining in his hands, or due from him on such settlement, to the person who is lawfully entitled thereto.

Section 5491, Comp. Laws 1909, is as follows:

"Every guardian must manage the estate of his ward frugally and without waste, and apply the income and profits thereof, as far as may be necessary, for the comfortable and suitable maintenance and support of the ward, and his family, if there be any; and if such income and profits be insufficient for that purpose, the guardian may sell the real estate upon obtaining an order of the probate court therefor, as provided, and must apply the proceeds of such sale, as far as may be necessary, for the maintenance and support of the ward and his family, if there be any."

On account of section 5513, Comp. Laws 1909, which provides:

"The county court, on the application of a guardian or any person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales and any other of his ward's money in his hands, in real estate, or in any other manner most to the interest of all concerned therein; and *the probate court may make such other orders and give such directions as are needful for the management, investment and dis-*

*position of* the estate and effects, as circumstances require" (italics ours)

—a guardian has no authority to lease the lands of his ward, or enter into a license or contract covering the same, for oil and gas mining purposes, without the direction and approval of the probate court. For said section stipulates that the probate court may "make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require." The rule obtaining at common law for the guardian to lease the lands of his ward without the approval of the court is thereby changed.

We reach the conclusion that a lease for oil and gas or mining purposes is not a "conveyance of real estate" within the purview of section 5314, *supra,* and in this we are supported by many authorities dealing with and construing statutes of similar import.

In *Tone v. Brace,* 11 Paige (N. Y.) 566, in holding that a lease for a term of years was not within the statute excluding implied covenants in conveyances of land, the chancellor said:

"Such a lease is not, in common parlance, called a conveyance of lands, tenements, or hereditaments, though an instrument by which the lessee might afterwards transfer his interest in the leasehold premises to another might very properly be denominated a conveyance of his chattel interest as lessee."

In *Perkins v. Morse,* 78 Me. 17, 2 Atl. 130, 57 Am. Rep. 780, the court, reaching the conclusion that a lease for years by a married woman was not a conveyance of the land, said:

"A lease may be, in a sense, a conveyance; but such is not the commonly accepted nor the accurate meaning of the term. When we say premises are 'leased,' we generally mean that the use of them is transferred, and by the term 'conveyed' that the title is deeded."

In *State v. Evans,* 99 Minn. 220, 108 N. W. 958, 9 Am. Cas. 520, upholding an act of the Legislature providing for the issuance of mineral leases on school lands, without offering them at public sale, in the face of a constitutional provision that no such lands should be sold otherwise than at public sale, the court said:

"The term 'sale,' as ordinarily used, and as it is used in the Constitution in reference to the disposition of school lands, means

the transfer of the absolute or general property in the thing sold. In determining whether a mineral lease of the kind here in question is a sale, neither the name nor form given to it by the statute is controlling. The legal effect of the transaction determines its classification, not its form. * * * The conclusion to be drawn from the English cases, as clearly and correctly stated by the learned trial judge, is this: 'That from the very beginning the rights of the man who owned the land, and of the man who took the minerals from it, were worked out through the law of tenancy, without the aid of the law of sales. That it was never a conception of the law that the man who took away the mineral got his title through a sale by the owner of the land; but the theory was that the mineral was the product of the use for which rent was paid, and that the tenant got his title to his mineral by an appropriate use of the demised premises. That it never was a circumstance of significance that the use of the demised premises, in accordance with the intent of the parties, and in accordance with the nature of the use to which they could be put, resulted in the gradual consumption or even exhaustion of the portion of the land of chief worth.' A consideration of the cases in this country leads to a like conclusion."

2. Is a lease for oil and gas mining purposes for a term of years realty or personalty? Under our statute, "estates for years are chattels real." Section 7216, Comp. Laws 1909.

In 1 Woerner's American Law of Administration, at page 231, it is said:

"Leasehold estates and estates for years are treated at common law as personal property, and the widow of a lessee dying is not entitled to dower therein, although it be for a period of a thousand years, or renewable forever, or although the lease contain a covenant to convey the estate in fee on the demand of the lessee."

In *Despard et al. v. Churchill et al.*, 53 N. Y. 192, it is said:

"The property in this state affected by this will is leasehold estates, held by leases for a short term of years. That is, at common law, personal property. 3 Kent, 401; 2 Kent, 342; *Merry v. Hallet*, 2 Cow. 497; *Brewster v. Hill*, 1 N. H. 350."

In *Cunningham v. Baxley*, 96 Ind. 367, where a lease for life was under consideration, it was said:

"Such a lease is not real estate; it is a chattel interest; it does not descend to the heirs, but goes to the executor or administrator; and he is the party to maintain a suit for possession against

one who has wrongfully taken possession of the leased premises. * * * "

In *McCormick v. Stepheny*, 57 N. J. Eq. 264, 41 Atl. 843, it is said that the unexpired term of a lease "is an asset in the hands of the executor or administrator. * * * By the express terms of the will all real and personal estate are given to the complainant," lessee's widow. "But, however absolute may be the gift to her, if the thing be an asset to be administered, the executor primarily takes it, and all rights touching must, during the period of administration, be asserted by the executor as such, or it must appear that the executor assents to the possession of the legatee."

In *Thornton v. Mehring*, 117 Ill. 55, 25 N. E. 958, a lease for 89 years being under consideration, the court said:

"There would seem to be no doubt that the lease in this case was personalty, and the legal title and power of disposal passed to the administratrix on the grant of letters of administration."

In *Faler v. McRae*, 56 Miss. 227, it was held that a lease of land for 99 years is a chattel real, and upon the death of the lessee descends to the administrator of his estate, and that so long as there is a valid debt against the estate the heirs and distributees cannot acquire any title as against the creditor, and any conveyance thereof by them is ineffectual as against such creditor. To the same effect, see *Webster v. Parker*, 42 Miss. 465; *Becker v. Walworth*, 45 Ohio St. 169, 12 N. E. 1; *Rickard v. Dana*, 74 Vt. 74, 52 Atl. 113.

In *Gutzweiler's Adm'r v. Lackmann*, 39 Mo. 97, it is said:

"Being a lease for ten years, we think it should be treated as a mere chattel interest, which, of course, goes to the administrator upon the death of his intestate, and not to the heirs, and therefore the suit was properly revived in the name of the personal representative."

See, also, *Dillingham v. Jenkins*, 15 Miss. 479; 3 Kent's Commentaries, p. 401; *Lenow v. Fones*, 48 Ark. 557, 4 S. W. 56; *Goodwin v. Goodwin*, 33 Conn. 317; *Whitmire v. Wright*, 22 S. C. 446, 53 Am. Rep. 725; *Holzman v. Wager*, 114 Md. 322, 79 Atl. 205, Ann. Cas. 1912A, 619.

In *Kolachny v. Galbreath et al.,* 26 Okla. 772, 110 Pac. 902, it was held that:

"Oil and gas, while in the earth, unlike solid minerals, are not the subject of ownership distinct from the soil, and the grant of the oil and gas, therefore, is a grant, not of the oil that is in the ground, but of such a part as the grantee may find, and passes nothing that can be the subject of an ejectment or other real action."

In *Frank Oil Co. v. Belleview Gas & Oil Co.,* 29 Okla. 719, 119 Pac. 260, this court followed the rule announced in *Kolachny v. Galbreath et al., supra,* and said:

"This lease, under these decisions, does not have the effect of placing the title of the oil and gas that is under the surface of the land in controversy in the lessee, but to grant to the lessee the privilege of exploring for the oil and gas."

The rule seems to be settled in this jurisdiction that the grant of an exclusive privilege to go upon land for the purpose of exploring for oil or gas, the grantor to receive part of the oil or gas mined, does not vest in the grantee any estate in the land or oil or gas, but is merely a license or grant; such a lease creating an incorporeal hereditament only, and the lessee having no right or title to the oil or gas lying under the surface of the land. This, under our statute, is simply a chattel real.

In *Wagner v. Mallory,* 169 N. Y. 501, 62 N. E. 584, a deed was under consideration, wherein "all the lands and premises" owned by the grantor, located in a certain place and specifically described, were conveyed to a certain grantee. There was an oil and gas lease outstanding in favor of a certain lessee, made by the grantor. The grantee in the deed afterwards insisted that said conveyance vested in him also the lease interest. The court held that the interest under the lease was not transferred, saying:

"In other words, the intent was to convey an interest in real estate, and not in personal property. We think the provision does not cover the interest in the lease."

This case specifically holds that an oil and gas lease is personal property.

We conclude that an oil and gas lease is neither a conveyance, within the purview of section 5314, *supra,* nor a sale of the

minor's real estate within the terms of said section; such lease being personalty.

But it is insisted that these conclusions are contrary to section 5530, Comp. Laws 1909, which authorizes guardians of infants and insane persons to lease and grant oil and gas mining rights in consideration of a royalty or part or portion of the production thereof, and under the same procedure in the county court, as now provided by law, where such consideration is money. But we have heretofore reached the conclusion that the rule existing at common law, by which the guardian was authorized to lease the lands of the ward for a number of years without the approval of the probate court, has been changed by section 5513, *supra,* and that by said section said leases in order to be valid must be first approved by the probate court; it being specially provided by said section that the probate court may make such other orders and give such directions as are needful for the management, investment, and disposition of the estate and effects, as circumstances require.

Having also reached the conclusion that such a lease was personalty and not realty, it is under the procedure by virtue of said section 5513 that oil and gas leases were authorized to be approved by the probate court, and section 5530 obviously referred to such procedure by virtue of said section. This construction harmonizes all the provisions of said statutes.

This conclusion does not militate against the rule announced in *Eldred et al. v. Okmulgee Loan & Trust Co.,* 22 Okla. 742, 98 Pac. 929. There it was held that a lease was an alienation within the terms of an act of Congress approved April 21, 1904 (33 Stat. 204, c. 1402), which reads:

'And all restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed."

Wherein this court said:

"Hence we conclude that a lease conveys a leasehold estate; is an 'alienation by deed'; is an alienation within the intent and meaning of the act of April 21, 1904, *supra,* upon which species of alienation restrictions by that act were removed."

But we have heretofore reached the conclusion that lease-hold estates and "estates for a term of years" were chattels real, and that such were included within that class of property known as personal property, and the procedure followed in this record harmonizes with that in force in the state for the sale of personalty by order and approval of the probate court.

In the argument of this case before this court the statement is made without denial that hundreds of acres of land belonging to minors in Eastern Oklahoma have been explored under contracts similar to this, approved by the county courts under a similar procedure; that the county courts of said section of the state where oil and gas have been found have uniformly construed section 5314, Comp. Laws 1909, as not applying to an oil and gas lease; that the district courts, where the question has been raised, have also put a like construction thereon; and that the Secretary of the Interior has uniformly recognized as legal and valid leases of minors approved under the procedure in this case in the conduct of his office relative to the guardianship of the federal government over the Indians.

No charge of fraud is made in this case against the defendant in error; no charge of actual fraud is made against the guardian. The only allegation kindred to such a charge is that the guardian's conduct in making the lease was a fraud because it has resulted in the wasting of the oil and gas in the lands of the defendant, but just how the exploration and development of property for oil and gas and the accounting for the same by legitimate production can be waste is not pointed out.

Wherever there is fraud participated in by the lessee, as a rule the conveyance may and ought to be set aside. That is not the question here involved. The rule here sought to be invoked would strike down every lease, it matters not how much investment had been honestly made under it, and probably bring about chaotic conditions in the development of one of the great industries of this state.

These investments have been made under constructions placed by the county judges and the district judges on these statutes. *MaHarry v. Eatman,* 29 Okla. 46, 116 Pac. 935. A reasonable

consideration of these statutes sustains the conclusion reached by such courts.

It follows that the judgment of the lower court must be affirmed.

TURNER, C. J., and HAYES, KANE, and DUNN, JJ., concur.