## TIBBENS v. CLAYTON et al.

(District Court, E. D. Oklahoma. March 8, 1923.)

No. 2809.

**1. Guardian and ward ⬦113—Oil and gas lease, without competitive bidding, valid; "to approve;" "sale of realty."**

An oil and gas lease for a term of years is a chattel real, and not a "sale of realty;" as contemplated by Comp. Laws Okl. 1909, §§ 5314, 5489, 5491, as brought forward in Rev. Laws Okl. 1910, and hence county court had authority to approve the extension or renewal of an oil or gas lease made by the guardian of a minor, through private negotiation and without competitive bidding or preliminary public notice, and without first having been so authorized by the said court prior to the promulgation of probate rule No. 9, made effective by the Supreme Court of Oklahoma July 10, 1914 (171 Pac. viii). The words "to approve," meaning to "sanction officially," embrace both direction and confirmation.

**2. Courts ⬦366(22)—Federal courts will follow decisions of state court.**

Federal courts will follow the rulings of the Oklahoma Supreme Court, establishing the principle that the county courts, by virtue of Const. art. 7, §§ 12, 13, have power to approve an oil and gas lease made by a guardian of his ward's land as one not derived from the statute providing for the sale of such ward's real property, particularly where that holding had been induced by the recognized usage and approval of the courts and the Secretary of the Interior, and under which a multitude of investments had been made and large property interests had arisen.

**3. Courts ⬦80(1)—Rules of court must be consistent with provisions of statute.**

Under Rev. Laws Okl. 1910, § 5347, requiring rules promulgated by the court to be consistent with the provisions of the statutes of the state, it is clear that rule 9 of the Probate Rules, as promulgated by the Supreme Court, effective July 10, 1914 (171 Pac. viii), requiring oil and gas or other mineral leases of lands belonging to minor or incompetent to be approved only after sale in open court to the highest and best responsible bidder, was promulgated in the belief that no statute existed in conflict with said rule.

**4. Mines and minerals ⬦75—Extension or renewal of gas lease has same effect as new lease with possession.**

There is no material difference between an extension and a renewal of a gas lease, and an extension by agreement of parties has the same effect as a new lease with immediate possession.

**5. Guardian and ward ⬦113—Oil and gas lease not limited by statutes relating to sale of real or personal property.**

The leasing of a ward's or minor's lands by the guardian for oil and gas *held* to be a contract for the exploration of the land for oil and gas according to the terms and provisions of the written lease, authorized by approval of the probate court, and the procedure prescribed by the Oklahoma statutes for the sale of personalty or of real estate did not apply.

In Equity. Bill by C. G. Tibbens against William McKinley Clayton and others, to quiet title to certain oil and gas leases. Decree for plaintiff.

Geo. S. Ramsey (Ramsey, De Meules, Rosser & Martin), of Muskogee, Okl., for plaintiff.

Gibson & Hull, of Muskogee, Okl., for defendants.

WILLIAMS, District Judge. The question decisive of the above styled and numbered cause involves the power of the county court to ap-

prove an oil and gas or such mining lease, or the extension or renewal thereof made by guardian of a minor through private negotiation and without competitive bidding or preliminary public notice, and without first having been so authorized by the said court, prior to the promulgation of probate rule No. 9, made effective by the Supreme Court of the state of Oklahoma on July 10, 1914.

. In Duff et al. v. Keaton et al., 33 Okl. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472, it was held that:

"A lease granting oil and gas mining privileges for a term of years is not a 'sale of realty' as contemplated by section 5314, Comp. Laws 1909," or sections 5489 and 5491, Comp. Laws 1909.

And that:

"A lease for such purposes, made by the guardian of a minor, permission of the court having first been obtained thereto, and such lease having been approved and confirmed by the court, though without the preliminary notices essential for the order of sale and confirmation of the same in case of the sale of real estate of minors by guardians, is valid against a collateral attack."

In that case the application filed before the county court asked the court:

"To make and enter an order herein directing him, as the guardian of said minor, to enter into an oil and gas mining lease with some responsible person or company in order that said premises may be developed for oil and gas, and the estate of said Cedric Duff protected."

The order made thereon recited as follows:

" * * * And it being shown to the court that such action will be to the best interest of said ward, and that it is necessary to execute an oil and gas mining lease to some person or company which is able to properly develop said premises in order that the interest of said minor may be protected, and it being fully shown to the court that neither the guardian nor his ward have means sufficient to develop said premises for oil and gas, it is by the court ordered that said Harwood Keaton, guardian of the person and estate of Cedric Duff, a minor, be and is hereby directed and authorized to execute an oil and gas mining lease to some company or person responsible and able to develop said premises for oil and gas."

Thereafter in due course the court made another order, in part as follows:

"It is therefore by the court considered, ordered, and adjudged that the lease this day executed by Harwood Keaton, as guardian of the person and estate of Cedric Duff, a minor, to the Prairie Oil & Gas Company, a Kansas corporation, covering the above-described premises, be and the same is hereby approved and confirmed by this court."

[1] In said opinion it is further stated that a lease for a term of years is a chattel real, therefore personalty, which was merely declaratory of the general rule. At the same time that the opinion was delivered in Duff et al. v. Keaton et al., supra, the court also decided Allen v. Midway Oil & Gas Co., 33 Okl. 91, 124 Pac. 286, wherein it was said:

"The facts in this case are substantially and *practically* [italics mine] the same as those in Cedric Duff et al. v. Harwood Keaton et al., 124 Pac. 291

[decided at this term of court]." And, "under the authority of said cause, the judgment of the lower court is affirmed."

In Allen v. Midway Oil & Gas Co., supra, the trial court sustained a demurrer to the petition in which the plaintiff sought to have an oil and gas lease canceled on the ground that the guardian executed or signed the oil and gas lease as such before the order was entered by the county court appointing him guardian, such appointment being made a day or two after said lease was actually signed by him, as guardian, and thereafter as such guardian he asked the county court to approve and confirm such lease, which was done.

In Duff v. Keaton, the court held that " * * * the statutes of this state are entirely lacking as to any specific provision for the procedure to be followed by the guardian in leasing the lands of his ward for agricultural or grazing or commercial purposes or for exploring for oil or gas," and that the only restriction thereon was the modification of the common-law rule as to leasing of a ward's land, in that the approval of the court was required; neither competitive bidding, nor notice, nor prior authorization of the court, being a preliminary requisite for such a leasing at common law. The guardian, however, not only at common law, but also here, is required to exercise good faith in the making of such lease.

An oil and gas lease for a term of years involves the use of the property for a specific purpose during such period, as distinguished from the acquirement of title of the property, which is by means of a sale. A lease, in order to be brought within the requirements of the specific procedure that a petition is first to be filed and authorization and direction and notice made, must contemplate a conveyance of the title of property by a sale under the prescribed procedure under Compiled Laws of 1909, which is the same under the Revised Laws of 1910.

In Duff et al. v. Keaton et al., 33 Okl. at page 98, 124 Pac. at page 293, 42 L. R. A. (N. S.) 472, it is said:

"Section 5491, Comp. Laws 1909, is as follows: 'Every guardian must manage the estate of his ward frugally and without waste, and apply the income and profits thereof, as far as may be necessary, for the comfortable and suitable maintenance and support of the ward, and his family, if there be any; and if such income and profits be insufficient for that purpose, the guardian may *sell* [italics mine] the real estate upon obtaining an order of the probate court therefor, as provided, and must apply the proceeds of such sale, as far as may be necessary, for the maintenance and support of the ward and his family, if there be any.'

"On account of section 5513, Comp. Laws 1909, which provides: 'The county court, on the application of a guardian or any person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales and any other of his ward's money in his hands, in real estate, or in any other manner most to the interest of all concerned therein: and *the probate court may make such other orders and give such directions as are needful for the management, investment and disposition of* the estate and effects, as circumstances require' (italics ours)—a guardian has no authority to lease the lands of his ward, or enter into a license or contract covering the same, for oil and gas mining purposes, without the direction and approval of the probate court, for said section stipulates that the probate court may 'make such other orders and give such directions as are needful for the man-

agement, investment and disposition of the estate and effects, as circumstances require.' The rule obtaining at common law for the guardian to lease the lands of his ward without the approval of the court is thereby changed.

"We reach the conclusion that a lease for oil and gas or mining purposes is not a 'conveyance of real estate' within the purview of section 5314, supra, and in this we are supported by many authorities dealing with and construing statutes of similar import."

"To approve" is to sanction officially. This embraces both direction and confirmation.

Section 5314, Comp. Laws of Oklahoma 1909, provides:

"If it appear necessary to sell a part of the real estate, and that by a sale thereof the residue of the estate, real or personal, or some specific part thereof, would be greatly injured or diminished in value, or subjected to expense or rendered unprofitable, or that after such sale the residue would be so small in quantity or value, or would be of such a character with reference to its future disposition among the heirs or devisees, as clearly to render it for the best interests of all concerned that the same should be sold, the court may authorize the sale of the whole estate, or of any part thereof necessary and for the best interest of all concerned."

Section 5299 of the Compiled Laws of Oklahoma of 1909 provides that the property, personal or real, may be sold as the court may direct in the manner hereinafter prescribed. Section 5300 of the Compiled Laws of Oklahoma of 1909 provides that:

"No sale of *any property* [italics mine] of an estate of a decedent is valid unless made under oath of the county court, except as otherwise hereinafter provided. All sales must be reported under oath, and confirmed by the county court, before the title to the property sold passes."

Section 5301 of the Compiled Laws of Oklahoma provides that:

"All petitions for orders of sale must be in writing, setting forth the facts showing the sale to be necessary, and upon the hearing, any person interested in the estate may file his written objections, which must be heard and determined. A failure to set forth the facts showing the sale to be necessary will not invalidate the subsequent proceedings, if the defect be supplied by the proofs at the hearing, and the general facts showing the necessity be stated in the order directing the sale."

Section 5303 of the Compiled Laws of Oklahoma provides that:

"At any time after receiving letters, the executor, administrator, or special administrator may apply to the judge and obtain an order to sell perishable and other personal property likely to depreciate in value, or which will incur loss or expense by being kept, and so much other personal property as may be necessary to pay the allowance made to the family of the decedent. The order for the sale may be made without notice; but the executor, administrator or special administrator is responsible for the property, unless after making a sworn return, and on proper showing, the court shall approve the sale."

In section 5489, Compiled Laws 1909, it is provided:

"Every guardian appointed under the provisions of this article, whether for a minor or any other person must pay all just debts due from the ward out of his personal estate and income of his real estate, if sufficient; if not, then out of his real estate, upon obtaining an order for the sale thereof, and disposing of the same *in the manner provided by law for the sale of real estate of decedents.*"

This section is brought forward into Oklahoma Revised Laws of 1910 (section 6542) without change.

Section 5499 provides:

"When it appears to the satisfaction of the court, upon the petition of the guardian, that for the benefit of his ward his real estate, or some part thereof, should be sold, and the proceeds thereof put out at interest, or invested in some productive stock, or in the improvement or security of any other real estate of the ward, his guardian may sell the same for such purpose, upon obtaining an offer therefor."

Said section 5499, Comp. Laws of Oklahoma 1909, is brought forward in the Revised Laws of Oklahoma of 1910 as section 6554, with the words "or personal" inserted after the words "that for the benefit of his ward his real." In a footnote under said section 6554, which was made by the codifiers, we find the following: "Or personal" inserted after "real," as there appears to be no reason for confining the section to the ward's real estate.

Section 5498, Comp. Laws 1909, provides that:

"When the income of an estate under guardianship is [in]sufficient to maintain the ward and his family, or to maintain and educate the ward when a minor, his guardian may sell his real or personal estate for that purpose, upon obtaining an order therefor."

Said section is brought forward in the Revised Laws of 1910 (section 6553) without change, the only change being made by the Code of 1910 was that personal estate as well as the real estate was authorized to be sold for reinvestment, whilst under the Code of 1909 the sale of personal estate whilst specifically authorized for support and maintenance was not specifically so authorized for reinvestment. But there is no intimation as to any change in procedure.

The holding of the Supreme Court of the state of Oklahoma in Duff et al. v. Keaton et al. and Allen v. Midway Oil & Gas Co. was in a measure induced by existing conditions. The oil industry had rapidly developed, numerous and great investments having been made on an unbroken rule as practiced by the probate courts and recognized and approved by the district courts and Secretary of the Interior. Leases for oil and gas or such mining purposes under such rule were not considered a conveyance of real estate within the purview of the statutes relating to the sale of real estate belonging to an estate of a minor or decedent.

The contention now seems to be made that, whilst such a lease for oil and gas or for such mineral purposes is not a sale of real estate, yet it is a sale of personalty, and on account of the insertion of the word "personal" in section 6554, Rev. Laws 1910, the cases of Duff v. Keaton and Allen v. Midway Oil & Gas Co. are inapplicable. A comparison of the statutes herein set out or referred to shows no such effect in the change of the statutes, and said cases are still applicable to all such leases approved prior to July 15, 1914. Under the Comp. Laws of 1909 (section 5300) a sale of personal property was authorized to be made only under order of the county court and to be confirmed by the county court before the title to the property sold passed, and (section 5303) under order of the county court "personal property" likely to depreciate in value or which will incur loss or expense by being kept, and so much other personal property as may

be necessary to pay the allowance made to the family of the decedent might be sold without notice subject to the approval of the court; and by section 5304, when a sale of personal property is necessary for the payment of claims allowed against the estate and for expenses of administration or legacies, application may be made for an order for the sale of so much thereof as may be necessary for such purposes, a petition, with notice of at least 5 days, being required to be given for the hearing of such application either by posting notices or by advertising, and except as above enumerated the sale of personal property is required to be made at public auction, and after public notice to be given at least 15 days by notices posted in three public places in the county, or by publication in a newspaper, or both, containing the time and place of sale, and a brief description of the property to be sold, unless for good reasons shown, the court or judge orders a private sale, or a shorter notice, public sales of such property being required to be made at the courthouse door, or at the residence · of the decedent, or at some other public place, and no sale to be made of any personal property which is *not present at the time of the sale unless the court or judge otherwise orders.*

Section 5502, Comp. Laws 1909, provides:

"To obtain an order for such sale, the guardian must present to the county court of the county in which he was appointed guardian, a verified petition therefor, setting forth the condition of the estate of his ward, and the facts and circumstances on which the petition is founded, tending to show the necessity or expediency of a sale."

Said section 5502 relates to both sections 5488 and 5489. All of the foregoing sections were brought over into the Revised Laws of 1910 without change, except as herein noted. Not only under the Compiled Laws of 1909, but also under the Revised Laws of 1910, a petition was provided for or prescribed as to an order for the sale of personal property. The cases of Duff et al. v. Keaton et al. and Allen v. Midway Oil & Gas Co. have application until the Supreme Court promulgated probate rule No. 9, which became effective on July 10, 1914. Under the common usage and practice of the county or probate courts, as sanctioned by the district courts, numerous and vast investments were made in the oil and gas business.

In Dewalt v. Cline, 35 Okl. 197, at page 204, 128 Pac. 121, at page 124, a like condition obtaining, when land titles in which thousands and thousands of dollars had been reasonably and in good faith invested were imperiled, the Supreme Court said:

"Many titles, representing numerous investments made under this practice, therefore depend for their validity upon the construction of sections 12 and 13 of article 7 of the Constitution. In MaHarry v. Eatman, 29 Okl. 46, 116 Pac. 935, one of the reasons given for holding that the probate courts prior to statehood had jurisdiction in certain instances to appoint guardians was that it had been the practice recognized for years in the Indian Territory, and that vast property interests had been acquired thereunder, and that such property rights would be unsettled by denying the authority of said courts to make such appointment. Chief Justice Marshall, in McKeen v. Delancy's Lessee, 5 Cranch. 22, 3 L. Ed. 25, is authority for this rule. We have also followed it in Duff et al. v. Keaton, 33 Okl. 92, 124 Pac. 291."

In Duff v. Keaton, 33 Okl. at page 104, 124 Pac. at page 296, 42 L. R. A. (N. S.) 472, it is said:

"In the argument of this case before this court the statement is made without denial that hundreds of acres of land belonging to minors in Eastern Oklahoma have been explored under contracts similar to this, approved by the county courts under a similar procedure; that the county courts of said section of the state where oil and gas have been found have uniformly construed section 5314, Comp. Laws 1909, as not applying to an oil and gas lease; that the district courts, where the question has been raised, have also put a like construction thereon; and that the Secretary of the Interior has uniformly recognized as legal and valid leases of minors approved under the procedure in this case in the conduct of his office relative to the guardianship of the federal government over the Indians. * * * These investments have been made under constructions placed by the county judges and the district judges on these statutes. * * * A reasonable consideration of these statutes sustains the conclusion reached by such courts."

[2] Under Duff et al. v. Keaton et al. and Allen v. Midway Oil & Gas Co., which were handed down at the same time, the Supreme Court of Oklahoma established the principle that the jurisdiction of the county courts of the state of Oklahoma to order a lease made by a guardian of his ward's land for oil and gas or such mineral purposes is not derived from the statute providing for the sale of real property, that holding being induced in a measure by the practice and usage followed by the county and recognized by the district courts and Secretary of the Interior, which had existed from the erection of the state and under which a multitude of investments had been made and vast property rights arisen. Such being the case, it is my duty to so follow that announced ruling, which resulted under the power of the county courts by virtue of sections 12 and 13 of article 7 of the Constitution of the state and the statutes applicable thereto. See Duff v. Keaton, 33 Okl. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472; Allen v. Midway Oil & Gas Co., 33 Okl. 91, 124 Pac. 296; Cabin Valley Mining Co. v. Hall, 53 Okl. 760, 155 Pac. 570. L. R. A. 1916F, 493; Ardizzonne et al. v. Archer (Okl.) 160 Pac. 446; Hoyt v. Fixico (Okl.) 175 Pac. 517; Mallen v. Ruth Oil Co. (D. C.) 230 Fed. 497; Mallen v. Ruth Oil Co., 231 Fed. 845, 146 C. C. A. 41; Spade v. Morton, 28 Okl. 384, 114 Pac. 724; Taylor v. Callahan, 82 Okl. 67, 198 Pac. 487; Farmers' Hardware & Implement Co. v. Thacker, 54 Okl. 425, 153 Pac. 1144; Stokes v. Williams, 226 Fed. 148, 141 C. C. A. 146; In re Haywood Wagon Co., 219 Fed. 665, 135 C. C. A. 391; First National Bank v. Colonial Trust Co., 66 Okl. 106, 167 Pac. 985; Bennett v. Bennett, 65 Neb. 432, 91 N. W. 410, 96 N. W. 994; Williams v. Miles, 63 Neb. 859, 89 N. W. 452; People v. Wayne County Circuit Court, 11 Mich. 393, 83 Am. Dec. 754; Indian Land & Trust Co. v. Shoenfelt, 5 Ind. T. 41, 79 S. W. 134.

Rule 9 of the probate rules as promulgated by the Supreme Court, effective July 10, 1914 (171 Pac. viii), is as follows:

"No oil and gas or other mineral lease covering lands belonging to minors or incompetents will be approved except after sale in open court to the highest and best responsible bidder. All petitions for the approval of oil and gas leases shall be filed five days before the same are sold as provided herein;

and notice of such sale must be given by posters and by publication where publication is practicable."

Rule 18 (171 Pac. ix), promulgated at the same time, is as follows:

"All advertising not required by law may be waived by the consent of the county court upon the approval of the probate attorney or tribal attorney."

In Winona Oil Co. v. Barnes, 83 Okl. 251, 200 Pac. 983, the Supreme Court of this state quoted with approval the following excerpt from Thompson v. Hatch, 3 Pick. (Mass.) 512:

"A rule of court thus authorized * * * has the force of law, and is binding upon the court, as well as upon the parties to an action, and cannot be dispensed with to suit the circumstances of any particular case."

In Beers v. Haughton, 9 Pet. 329, 341, 9 L. Ed. 145, 150, it is said:

"Rules of court can never vary the mode of proceeding prescribed by statute, or give a right of discharge in any other mode, or upon any other terms than those contained in it. They are the only mode adopted by the court in administering the laws of the land—they can never add to, diminish, or vary the provisions of a statute."

[3, 4] Section 5347, R. L. 1910, required the rules promulgated by the court to be consistent with the provisions of the statutes of the state. So the Supreme Court of the state of Oklahoma, which was undoubtedly familiar with the holdings in Duff et al. v. Keaton et al. and Allen v. Midway Oil & Gas Co. then believed that no statute existed in consicted with said rule.

The Supreme Court of the state has sustained an extended lease under similar procedure in case of a minor as shown by the evidence introduced in this case. Cabin Valley Mining Co. v. Hall, 53 Okl. 760, 155 Pac. 570, L. R. A. 1916F, 493. In addition, the evidence introduced in this case shows that as to extensions or renewals such was the recognized and prevailing practice in the county courts prior to July 15, 1914, and that in cases of oil and gas leases of minors on restricted Indian lands, such practice was recognized by the Secretary of the Interior by his approving such leases when on his prescribed form; no distinction being made in practice or procedure between an original and an extension or renewal oil and gas lease. It further appears that in many cases such extended or renewed leases have by the lessee been assigned, the assignee parting with great value therefor, relying on such recognized practice.

In this case the lease was extended or renewed. It is immaterial whether you call it an extension or renewal. An extension, by agreement of parties, has the same effect as a new lease with immediate possession. 24 Cyc. 1369; Tiffany on Real Prop. (2d Ed.) 1582; Underhill on Landlord & Tenant, vol. 2, pp. 1194, 1200.

[5] Under Duff et al. v. Keaton et al. and Midway Oil & Gas Co., supra, the leasing of the ward's or minor's land by the guardian for oil and gas and such mineral purposes was not a sale of the lease, but a contract for the exploration of the land for oil and gas according to the terms and provisions of the lease authorized by approval of the court, and the procedure prescribed by statute for the sale of

personalty or of real estate did not apply. By the Constitution and statutes, and under the practice which had been sanctioned by common usage, the probate courts were authorized to approve the leases in the manner as was sanctioned in Duff et al. v. Keaton et al. and Midway Oil & Gas Co., and whether the extension agreement be treated as an amendment of the original lease as to its terms and also the royalty provisions and thereby becoming a new lease, or whether it be treated as a new lease as by renewal, the original lease 'being thereby superseded under such holdings, and said extension of the lease herein involved being made prior to the adoption of rule No. 9, which became effective July 10, 1914, the county court had jurisdiction to make the order approving same, and it having jurisdiction for such purpose and there being no fraud shown, plaintiff is entitled to prevail in this action and have his rights under said lease protected and quieted. Wherever there is fraud participated in by the lessee, as a rule the conveyance may be and ought to be set aside.

Counsel for plaintiff is directed to prepare a decree granting plaintiff's relief, to be presented to the court at Muskogee on March 15, 1923. The clerk will so notify all attorneys of record.