### CURTIS et al. v. McCASLAND.

No. 18484. Opinion Filed June 26, 1928.

(Syllabus.)

1. **Property—Effect of Peaceable Possession of Real Estate—Notice of Possessor's Actual Interest.**

One who is in the peaceable possession of real estate has a title good against all the world for every purpose until a superior title is shown; and such open, actual possession of such property gives notice to the world of just such interest as the possessor actually has therein.

2. **Indians—Agricultural Lease on Inherited Land by Guardian of Full-Blood Minor—Necessity for Approval of County Court.**

An agricultural lease for a term of one year, executed by the guardian of a full-blood minor Choctaw Indian born since March 4, 1906, upon the homestead allotment of said minor's deceased mother, must be executed with the approval of a county court having jurisdiction of the guardianship of said minor.

3. **Same—State Statutes.**

The control of a guardian over the estate of his ward, as set out in sections 1455 and 1482, C. O. S. 1921, does not authorize the guardian of an Indian minor to make an agricultural lease of his ward's allotment without the express approval or authorization of the county court so to do.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by T. H. McCasland against G. W. Carter et al. Judgment for plaintiff, and defendants appeal. Affirmed.

Bond & Bond, for plaintiffs in error.

Womack, Brown & Cund, for defendants in error.

MASON, V. C. J. The defendant in error, as plaintiff, commenced this action against the plaintiffs in error herein to recover the possession or rental value of certain described lands for the year 1923 in the sum of $424.89. Plaintiff's cause of action was founded on a written rental contract covering said lands for the year 1923, executed for Tecumseh Wade, a minor, by his guardian, Louisa Anderson, and approved by the proper county court, while the defendant relied upon a prior verbal contract with said guardian which was not approved by said court.

Upon trial of the cause, the parties stipulated and agreed that said land was a part of the homestead allotment of Mimie Wilson, full-blood Choctaw Indian, and that she died in the year 1907, leaving the said Tecumseh Wade, a full-blood minor child, born since March 4, 1906; that during the year 1923, Louisa Anderson was the duly appointed, qualified, and acting guardian of said minor and that said guardianship proceedings were pending in the county court of McCurtain county; that the defendant G. W. Carter, through the other defendants, as tenants, was in possession of said property on January 1, 1923, and still remained in possession thereof at the time of the execution

of the plaintiff's lease; that the rental value of said premises for the year 1923 was $424.89.

A copy of plaintiff's written contract and a certified copy of the order of the county court of McCurtain county, made on the 17th day of July, 1923, approving said lease contract of the plaintiff, were admitted in evidence.

Defendants introduced evidence of the oral contract whereby said guardian leased said property to the defendant Carter, on January 1, 1923, and the further evidence that he paid a consideration of $50 therefor on the 8th day of January, 1923. The trial court rendered judgment for the plaintiff for $424.89, and the defendants appeal.

It is first urged that the possession of G. W. Carter was notice to the plaintiff of all rights claimed by Carter in said property and the growing crops thereon. Counsel cite Chism et al. v. Majors, 92 Okla. 45, 217 Pac. 465, which holds:

"One who is in the peaceable possession of real estate has a title good against all the world for every purpose until a superior title is shown, and such possession a prima facie evidence of title against the mere intruder."

Counsel also cite the first paragraph of the syllabus in the case of Wilkinson et al. v. Stone, 82 Okla. 296, 200 Pac. 196, which announced the rule as follows:

"The possession of real property carries with it the presumption that the possession of the occupant is rightful, and it is the duty of those dealing with others than the party in possession regarding such property to ascertain the claim of the party in possession. The open, actual possession of such property gives notice to the world of just such interest as the possessor actually has therein."

It is admitted that at the time the plaintiff took his lease, G. W. Carter, through his tenants, was in actual possession of said property, and, therefore, the plaintiff, under the foregoing rule, was charged with notice of whatever rights Carter or his tenants might have had in or to said property. If the plaintiff had made inquiry, he would have found that the defendants were claiming under a lease executed by the guardian but which was not approved by the county court having jurisdiction of the guardianship of said minor, Tecumseh Wade. Would such a lease give the defendants any interest in said property? If so, it would be presumed that the plaintiff had notice thereof, and the judgment of the trial court must be reversed. Otherwise, it will be affirmed.

Counsel for plaintiff in error contend that the guardian herein could lease the ward's real estate for agricultural purposes for one year without the approval of the county court. No authorities are cited which support said contention, and we know of none.

The case of Longmeyer v. Jones, 51 Okla. 474, 151 Pac. 864, is cited, which holds that agricultural leases executed by members of the Five Civilized Tribes, covering their allotments, for a period of one year, need not be recorded, and that it is not necessary to their validity that they be reduced to writing. It is then urged that it must not have been intended that such oral lease be approved by the county court, for the reason that the county court would have nothing before it upon which to base such order of approval. This contention is untenable. The court in that case was considering a lease made by an adult, while we are considering a lease on a minor's land.

Section 9 of the Act of Congress of May 27, 1908, among other things, provides:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land. * * * Provided, further, that if any member of the Five Civilized Tribes of the one-half or more Indian blood shall die leaving issue surviving, born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section 1 hereof, for the use and support of such issue during their life or lives until April 26, 1931."

It is admitted that the land involved herein was the homestead of Mimie Wilson, a full-blood Choctaw Indian, and that she died leaving surviving her a full-blood son by the name of Tecumseh Wade, who was born since March 4, 1906. It will, therefore, be seen that the land involved herein, under the foregoing act of Congress, is restricted for the use and support of said minor during his life and until April 26, 1931.

Section 2 of said Act of May 27, 1908, among other things, provides:

"That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee, if an adult, or by guardian or curator under order of the proper court, if a minor or in-

competent, for a period not to exceed five years without privilege of renewal."

Section 6 of said act, among other things, contains the following provision:

"That the persons and property of the minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma."

Although said act removed restrictions of the lands of certain Indian minors or specified degrees of blood, yet section 6, supra, imposes a condition in the nature of a restriction upon said land, in that minor allottees and their property were placed under the control of the probate courts of the state of Oklahoma.

This brings the case at bar within the rule announced in the case of Bryant v. Montgomery et al., 73 Okla. 104, 174 Pac. 1080, wherein the following rule is announced:

"The control of a guardian over the estate of his ward, as set out in sections 6544 and 6569, Revised Laws 1910, does not authorize the guardian of an Indian minor to make a grazing lease of his ward's allotment, for a term of three years, without the express approval or authorization of the county court so to do."

Said sections now appear as sections 1455 and 1482, respectively, of the Compiled Statutes of 1921.

The case follows the rule announced in Duff v. Keaton et al., 33 Okla. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472, wherein it is held:

"A guardian has no authority to lease the lands of his ward, or enter into a license or contract covering the same, for oil and gas mining purposes, without the direction and approval of the probate court, for said section stipulates that the probate court 'may 'make such other orders and give such directions as are needful for the management, investment, and disposition of the estate and effects, as circumstances require.' The rule obtaining at common law for the guardian to lease the lands of his ward without the approval of the court is thereby changed."

Counsel for plaintiffs in error call attention to section 1461, C. O. S. 1921, which provides that the guardian must, upon the expiration of a year from the time of his appointment and as often thereafter as he may be required, present his accounts to the county court for settlement and allowance. Counsel then state that the county court knows at the expiration of each year, or oftener if he requires it, just how the guardian is handling the estate of his ward. This is true, and the county court probably at that time could approve an agricultural lease which the guardian had executed previously, but in the instant case the court approved the subsequent lease of the plaintiff, and in effect, at least, disapproved the lease of the defendants, which had been previously executed.

From the foregoing, we conclude that the defendants had no valid lease on said lands, and, therefore, the judgment of the trial court should be, and the same is, affirmed.

BRANSON, C. J., and PHELPS, LESTER, HUNT, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 39 Cyc. p. 1747; 22 R. C. L. p. 79 et seq. (2) 31 C. J. p. 522, §93; 12 R. C. L. p. 1127; 2 R. C. L. Supp. p. 1555.