## TWIST et al. v. PRAIRIE OIL & GAS CO.

### TWIST v. SAME.

Circuit Court of Appeals, Eighth Circuit.
May 7, 1928.

Nos. 6499, 6500.

1. **Judgment ⬅443(1)—Probate court judgment, authorizing extension of oil leases on minor wards' lands, is not conclusive in subsequent suit to cancel extensions for fraud.**

Judgment of county court sitting in probate authorizing extension of oil and gas leases on lands of minor wards, is not conclusive in subsequent suit in equity to cancel such extensions on ground of fraud, even if fraud is extrinsic.

2. **Guardian and ward ⬅113—Mere disparity of price for extension of oil leases on minor Indian wards' lands and price for assignment thereof held not to authorize cancellation.**

Alleged inadequacy of consideration for extension of oil and gas leases on lands of minor wards, based solely on great disparity between price paid for extension and purchase price paid for assignment thereof about nine months later, *held* not alone sufficient to authorize cancellation of extension approved by probate court.

3. **Courts ⬅366(30)—Decision of highest state court, determining inferior court's powers under state Constitution and laws, is binding on federal court.**

A decision of the highest state court, determining powers of an inferior court under the state Constitution and laws, is binding on federal court, even though federal court might not have reached same conclusions independently.

**4. Courts $\Longleftrightarrow$ 85(1)—Rules of Oklahoma Supreme Court governing procedure in sale of oil lease on minor's lands have force of law, and must be substantially followed (Const. Okl. art. 7, § 2; Rev. Laws Okl. 1910, § 5347; Oklahoma Supreme Court rule 9).**

Under decisions of Supreme Court of Oklahoma, rules promulgated under Const. Okl. art. 7, § 2 and Rev. Laws Okl. 1910, § 5347, by Supreme Court of Oklahoma, relating to procedure of county courts in probate matters, have the force and effect of law, and must be substantially followed, and a sale of oil and gas lease on lands of minors, not substantially complying with Oklahoma Supreme Court rule 9, is void.

**5. Guardian and ward $\Longleftrightarrow$ 113—Extension of oil leases on wards' lands without public sale held void as not substantially complying with court rule (Oklahoma Supreme Court rule 9).**

Where guardian applied for permission to enter into agreement already made to extend oil and gas leases on lands of Indian minor wards, and matter was set for hearing, and notices of public sale were published, but no order of sale was made, nor public sale held, court merely approving and confirming extension previously agreed on as for best interests of wards, *held*, that there was no substantial compliance with Oklahoma Supreme Court rule 9, requiring sale in open court to highest and best responsible bidder, and sale was therefore void.

**6. Courts $\Longleftrightarrow$ 82—Assignee of oil lease on minors' lands in disregard of court rule held not entitled to prevail on theory of vested rights under established rule of property (Oklahoma Supreme Court rule 9).**

Where Oklahoma Supreme Court had rendered a decision that procedure prescribed by its rules regulating probate matters must be strictly followed by probate courts, long before assignment of oil and gas lease on lands of Indian minor wards, as extended with approval of probate court, were made, assignee could not invoke rule that it was entitled to protection, because of vested rights acquired in good faith under an established rule of property notwithstanding failure to substantially comply with Oklahoma Supreme Court rule 9, requiring public sale to highest and best bidder.

Appeal from the District Court of the United States for the Eastern District of Oklahoma.

Separate suits by Edward C. Twist and others and by Edward C. Twist against the Prairie Oil & Gas Company. From adverse decrees, plaintiffs appeal. Reversed, with directions.

See, also, 6 F.(2d) 347; 274 U. S. 684, 47 S. Ct. 755, 71 L. Ed. 1297.

D. H. Linebaugh and Paul Pinson, both of Muskogee, Okl. (James S. Watson, of Tulsa, Okl., on the brief), for appellants.

A. A. Davidson, of Independence, Kan. (T. J. Flannelly and Paul B. Mason, both of Independence, Kan., and West, Gibson, Sherman, Davidson & Hull, of Tulsa, Okl., on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and KENNEDY, District Judge.

VAN VALKENBURGH, Circuit Judge. William G. Twist, a citizen of the Cherokee Nation, had an allotment of land upon which, September 30, 1904, he made an oil and gas lease to the Los Angeles-Cherokee Oil Company, the same to run for a period of 15 years. Three of his children, to wit, Edward C. Twist, Albert T. Twist, and Jessie L. Payne, née Twist, as Cherokee citizens, also had allotments. William G. Twist, as their guardian, made leases upon their allotments to the same lessee; that of Albert ran from March 22, 1905, to September 3, 1918; that of Jessie from March 22, 1905, until December 7, 1918; that of Edward from March 22, 1905, to March 21, 1920. The record discloses that Albert became of age September 4, 1918, and Jessie on December 8, 1917; Edward was still a minor when this suit was commenced, but became of age prior to the entry of judgment. William G. Twist, the father, died intestate in Tulsa county, Oklahoma, on or about the 27th day of June, 1907. Surviving him was his widow, now Leoria L. Twist Weldy, and five children, the three above named, Kuroki Twist, and Willie V. Twist. The two latter had no allotments. The widow succeeded her husband as guardian of these children, all then minors, and was duly appointed administratrix of his estate.

On June 5, 1916, Leoria L. Twist Weldy, as guardian and administratrix of the estate of William G. Twist, filed suit in the county court of Tulsa county, Oklahoma, setting up the leases upon the estate of her said husband and upon the allotments of Albert T. Twist, Edward C. Twist, and Jessie L. Twist, stating that the same were then in full force and effect, and were held by the original lessee, the Los Angeles-Cherokee Oil Company; that said named minor children were the heirs and owners in fee of the estate of the said William G. Twist; that royalty accruing under the terms of said leases was 10 per cent. of the value of the crude oil from the premises; that in consideration of the extension of the term of each lease for a period so long as oil or gas should be produced therefrom the Los Angeles-Cherokee Oil Company had offered to increase the royalty on each lease from 10 per cent. to 12½ per cent., effective forthwith, and to pay to the petitioner, for the benefit of herself and the said three minors as their interests in said lands might appear, an agreed amount

of money. This agreed amount was $18,-000. She stated further that, in her opinion, the proposition made was beneficial and for the best interests of herself and said minors, that the business of producing oil is attended by many hazards, and that the said sum of money in hand, with the immediate increase of royalty, was a certain profit which petitioner believed it her duty, on, behalf of said minors, to accept. She therefore prayed that she be permitted to enter into an agreement extending the term of each of said leases for a period so long as oil and gas should be found thereon, and that said agreement be confirmed and approved by the court. Thereupon the county court entered the following order:

"Now on this ———— day of June, 1916, Leoria L. Twist Weldy, the duly appointed, qualified, and acting guardian of the estates of Albert T. Twist, Edward C. Twist, and Jessie L. Twist, minors, and the duly appointed, qualified, and acting administratrix of the estate of William G. Twist, deceased, having filed in this court her petition praying leave of court to extend the leases on the individual allotments of land of her said wards, and on the lands of William G. Twist, deceased, for which she is administratrix, for the benefit of said wards and for herself, for oil and gas purposes, from the date of expiration of the present lease on each of said tracts of land for a period so long as oil or gas shall be produced. It is ordered that said petition be and the same hereby is set for hearing on the 10th day of June, 1916, at 10:30 o'clock a. m., and that the notice thereof in three (3) different public places in said county, publication not being practicable."

Pursuant to said order the following notice was posted in three different public places in Tulsa, Tulsa county, Oklahoma:

"Notice is hereby given in pursuance of an order of the county court of the county of Tulsa, state of Oklahoma, made on the 5th day of June, 1916, the undersigned, guardian of the estate of Albert T. Twist, Edward C. Twist, and Jessie L. Twist, minors, and as administratrix of the estate of William G. Twist, deceased, will sell at public sale to the highest bidder, subject to confirmation by said court, on Friday, the 16th day of June, 1916, at 10:30 o'clock a. m., in the county court room in the city of Tulsa, Oklahoma, an extension of an oil and gas mining lease, now covering the following described tracts of land in Tulsa county, state of Oklahoma, to wit: [Here follows description of property.] At which time and

at said place any person may appear to contest the sale of such extension or show cause why said lease or leases should not be extended from the date of the expiration of the present lease and leases for a period so long as oil or gas may or shall be produced from each and all of said leaseholds for oil and gas and the lands above described, and if any objections there be same to be filed in writing at the same time and place. Said extension of said oil and gas leases now covering said lands will be sold on the following terms and conditions, to wit: A bonus in cash, payment upon confirmation of sale of said leases covering said lands by the court. Dated this 5th day of June, 1916."

June 16, 1916, the court made the following order (we omit the description of the leased property as unnecessary to be incorporated for the purposes of this discussion):

"Now on the 16th day of June, 1916, the above matters coming on for hearing before the court, and the guardian appearing in person, and the Los Angeles-Cherokee Oil Company, a corporation, appearing by its attorneys, Rice & Lyons, and it appearing that the guardian, Leoria L. Twist Weldy, has heretofore, on the 5th day of June, 1916, filed a petition praying for the extension of the term of certain oil and gas leases heretofore granted upon the lands of the minors above named, and the court having heard the petition, witnesses, and statement of counsel, is advised in the premises and finds:

"1. That due and proper notice of said hearing has been given.

"2. That heretofore oil and gas leases were granted upon the lands of said minors, and the lands of said Twist, deceased; that said oil and gas leases are now in full force and effect and are held by the Los Angeles-Cherokee Oil Company, a corporation, and are now in the course of development and are producing oil; that said minors are the children of the petitioner, Leoria L. Twist Weldy, and William G. Twist, deceased; that said petitioner and the three minors are the sole heirs of the said William G. Twist, deceased; that the royalty accruing under the terms of the leases above set forth is ten (10%) per cent. of the crude oil produced from the premises.

"3. That the petitioner, for herself and as guardian, and the said Los Angeles-Cherokee Oil Company, have agreed that the term of each of said leases shall be extended for a period so long as oil or gas shall be produced therefrom, in consideration of the

payment by the said company of the sum of eighteen thousand ($18,000) dollars in cash, and an increase of the royalty on each lease from ten (10%) per cent. to twelve and one-half (12½%) per cent., effective forthwith and the drilling of a well on each of said tracts within six months from this date.

"4. That the said guardian is satisfied that the said agreement is beneficial and for the best interests of the said minors.

"5. The court finds that said proposition is beneficial and for the best interests of said minors and that the same should be approved.

"6. That the method of distribution of the said sum of eighteen thousand dollars as prayed for by the guardian is satisfactory.

"Wherefore it is ordered, considered, and adjudged that the said guardian, Leoria L. Twist Weldy, be and she hereby is authorized, in consideration of eighteen thousand ($18,000.00) dollars in cash, an increase of the royalty from 10 per cent. to 12½ per cent. and the drilling of a well on each of said tracts within six months of date hereof, to enter into an agreement with the Los Angeles-Cherokee Oil Company, a corporation, extending the terms of the following described leases, to wit: * * * It is further considered, ordered, and adjudged that the court, having examined said agreements extending the terms of said leases, does hereby approve and confirm the same, and does approve and confirm the extension of said leases for a term so long as oil or gas shall be found thereon."

This order was filed June 17, 1916, and the leases were extended accordingly. Later, to wit, on March 31, 1917, Leoria L. Twist Weldy, as guardian of Kuroki Twist and Willie V. Twist, minors, and as administratrix of the estate of William G. Twist, deceased, filed in the same court her petition, again setting out the lease executed by William G. Twist upon his allotment, and the substance of her petition of June 5, 1916, and the action taken thereon, alleging that the allegations of the petition and order in said proceedings were erroneous, in that the said Kuroki Twist and Willie V. Twist, minors, were children of William G. Twist, deceased, and entitled to participate, and were then participating, in the consideration paid by the said Los Angeles-Cherokee Oil Company for the extension of said lease; that said omission was due to inadvertence. Wherefore petitioner prayed that she be authorized to make, execute and deliver, as guardian of said Kuroki Twist and Willie V. Twist, minors, a stipulation identical in

27 F.(2d)—30½

form and substance with that executed on June 17, 1916; the consideration for same having been received on said date and now being held by petitioner for the benefit of the estates of said last named minor children. This petition was by the court granted, and the petitioner was directed to make, execute, and deliver, as guardian of said Kuroki Twist and Willie V. Twist, a stipulation identical in form and substance with said stipulation of June 17, 1916, "the consideration for same having been received on said date, and now being held by the same guardian for the benefit of the estates of said minors, and that no further or other consideration is required to be paid by said Los Angeles-Cherokee Oil Company to said guardian or to said minors." On March 5, 1917, these four leases, as thus extended, were sold and assigned by the Los Angeles-Cherokee Oil Company to the Prairie Oil & Gas Company. The aggregate amount paid for these leases was $251,266.21.

On August 3, 1922, four suits were instituted in the district court of Tulsa county, Oklahoma, covering the four leases upon the four separate allotments hereinbefore described. The first of these suits was by all the heirs of William G. Twist, the second by Albert T. Twist, the third by Edward C. Twist, and the fourth by Jessie L. Twist Payne; each action seeking the cancellation of one of the extension agreements and the recovery of the oil and gas taken from one of said leased tracts before the expiration of the original leases. Upon application of the Prairie Oil & Gas Company the cases were transferred to the federal court on the ground of diversity of citizenship. These four cases differed only as to description of land, time of expiration of the particular lease involved, and the party therein interested. The issues were substantially identical. At the trial judgment was entered dismissing the various petitions and quieting the title of the Prairie Oil & Gas Company in the various tracts, except as to appellees Kuroki Twist and Willie V. Twist in the William G. Twist land. The latter finding resulted in a cross-appeal by the Prairie Oil & Gas Company, which is involved in cause No. 6508.

At the hearing, however, counsel announced that that case had been settled and required no further consideration at our hands. The decrees in the four cases, numbered 6499, 6500, 6501, and 6502, were affirmed in this court on a point of procedure. 6 F.(2d) 347. No. 6499, Edward C. Twist et al. v. Prairie Oil & Gas Company,

and No. 6500, Edward C. Twist v. Prairie Oil & Gas Company, were taken before the Supreme Court on writs of certiorari; the decrees of this court were reversed, and those cases were remanded for further proceedings. 274 U. S. 684, 47 S. Ct. 755, 71 L. Ed. 1297. The merits were not involved. From No. 6501, Jessie L. Twist Payne v. Prairie Oil & Gas Company, and No. 6502, Albert T. Twist v. Same, no writs of certiorari were applied for ·nor taken, and those cases accordingly were disposed of by the decrees of affirmance in this court. Cases numbered 6499 and 6500 are now before this court on the original assignments of error. The issues are all presented in cause No. 6499, in which the complete record is printed, and a decision in that case governs the disposition of both cases. The Supreme Court pointed out that on the former appeals this court might have considered the case on the merits, as on an equity appeal, in the view that at such stage of the proceedings it was desirable to hold that the objection to the equity jurisdiction had been waived. It is upon this theory that the cases have now been briefed and submitted. ·

The assignments of error are reduced to two propositions: First, that the extensions of the leases are tainted with fraud and unfair dealing, and were obtained for wholly inadequate considerations; second, that the extension of the term of the leases on June 16, 1916, was not made in accordance with the provisions of rule 9 of the Probate Rules promulgated by the Supreme Court of Oklahoma, and that therefore the county court, in approving such extensions, acted without jurisdiction. The contentions of the appellee, Prairie Oil & Gas Company, are that the proofs fail to sustain the allegations of fraud and unfair dealing with respect to the modification of the lease contracts; that the fraud claimed is, if fraud at all, extrinsic fraud, and that the judgment and order of the county court is conclusive; that appellee was a bona fide purchaser for value and without notice of fraud, if such existed; that the requirements of rule 9 were substantially complied with in obtaining the extension of the terms of the leases involved; that failure to comply with that rule was not a jurisdictional defect; that these probate rules were rules of procedure merely, not affecting the constitutional and statutory authority of the county courts of Oklahoma with respect to the transactions involved; that the later decisions of the Supreme Court of Oklahoma are ineffective to deprive appellee of vested rights acquired at a time when it is claimed there was no decision as to the effect of such rules upon the jurisdiction of county court; that this court, therefore, has the right to determine for itself the effect of a violation of such rules; that the order and judgment of the county court approving the transactions involved was made in the exercise of a jurisdiction recognized by the Supreme Court of Oklahoma in prior decisions, and that under the rule of such decisions a right of property vested in appellee by its contract of purchase of the extended leases.

The alleged inadequacy of consideration is based upon the great disparity between the price paid for the extension of the leases and the purchase price paid by the Prairie Oil & Gas Company about nine months later. The fraud claimed consists in alleged mis-. representations and covert threats, amounting to duress, made by representatives of the Los Angeles-Cherokee Oil Company, by which the guardian was induced to make the extension agreement. The substance of this claim is disclosed in the following excerpts from the testimony of the guardian:

"The Court: * * * You say Mr. Pitt come to you about signing the petition? A. Yes, sir.

"The Court: What did he say to you? A. Well, of course, he asked me if I wouldn't make a commercial lease, is what he called it; he didn't say anything about a transfer. I told him, 'Mr. Pitt, I don't care to, because, while I am under the departmental lease we have the protection of the department.' He says, 'You have the protection of the whole state under a commercial.' I says that wouldn't be much when I had it; no, I don't feel like making that. He made the remark, 'You have always done the best for your children in every way.' He says, 'Do you think that the court will think that you are doing right?' Of course, I studied about it, and I told him I didn't know what the court would think. He says: 'You know there have been a good many guardian seeker's eyes on your minors all the time.' And of course, when he made that remark, it throwed a kind of fear over me that they might try to take the guardianship away from me. That is one of the things that caused me—

"The Court: Never mind. What else was said? A. I don't remember every detail. I told him I didn't like to accept it, but of course I did. He went up and got the papers. * * *

"Q. What statements, if any, did he make

to you with reference to the value of the property?

"The Court: Don't make suggestions.

"A. Well, I told him I didn't think it was enough. He says, 'Sure it is enough; it is really more than the leases are worth.' And then is when he come over it again. He says, 'Do you suppose that the court will think that you are still doing the best for your children, if you refuse that?' And that is about all of it that I can remember."

[1] Counsel for appellee insist that the fraud claimed is, if fraud at all, extrinsic fraud, and that the judgment and order of the county court is conclusive in this proceeding. To this we cannot assent. As stated in Arrowsmith v. Gleason, 129 U. S. 86–100, 9 S. Ct. 237, 32 L. Ed. 630, the whole subject was fully considered in Johnson v. Waters, 111 U. S. 640–667, 4 S. Ct. 619, 28 L. Ed. 547. It was there contended that plaintiff was concluded by the proceedings in the probate court, which was alleged to have exclusive jurisdiction of the subject-matter, and that its decision was conclusive against the world, especially against the plaintiff, a party to the proceedings. The court conceded the general rule, but held that it was not of universal application, and said:

"The most solemn transactions and judgments may, at the instance of the parties, be set aside or rendered inoperative for fraud. The fact of being a party does not estop a person from obtaining in a court of equity relief against fraud. It is generally parties that are the victims of fraud. The court of chancery is always open to hear complaints against it, whether committed in pais or in or by means of judicial proceedings. In such cases the court does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another court; but it will scrutinize the conduct of the parties, and if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it"—citing Story's Eq. Jur. §§ 1570–1573; Kerr on Fraud and Mistake, 352–353; Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524; and Barrow v. Hunton, 99 U. S. 80, 25 L. Ed. 407. The opinion of this court in Chicago, R. I. & P. R. Co. v. Callicotte, 267 F. 799, 16 A. L. R. 386, is to the same effect. We are not convinced, upon additional grounds hereinafter considered, that actual fraud did not enter into this transaction.

[2] However, we find in the record no sufficient justification for disturbing what must have been the conclusion of the trial court that the Prairie Oil & Gas Company was not chargeable with notice of the fraud, if such existed. The mere difference in the amounts of the considerations paid is not sufficient. The record does not disclose specifically what was purchased in the assignment to appellee, —whether it was confined to the lease itself or included other property. Results of development and future prospects may have had an important bearing upon the judgment of the purchaser. Appellee was, however, charged with notice of the proceedings in which the extensions were acquired and the crucial question is whether those proceedings were so irregular as to render those extensions void. The interests of the Indian minors here concerned are by law confided to the county court of Tulsa county, Oklahoma, exercising probate jurisdiction.

As is conceded by counsel, the probate court, in such cases, acts not as a limited federal agency, but its jurisdiction attaches generally; therefore its procedure is governed by the law of Oklahoma applicable to the administration of such estates. Section 2 of article 7 of the Constitution of Oklahoma provides that "the original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law." The county court, exercising probate jurisdiction, is such an inferior court. Section 5347, Revised Laws of Oklahoma, 1910, in force in June, 1914, provides:

"Supreme Court Rules. The justices of the Supreme Court shall meet every two years during the month of June, at the capital of the state, and revise their general rules, and make such amendments thereto as may be required to carry into effect the provisions of this Code, and shall make such further rules consistent therewith as they may deem proper. The rules so made shall apply to the Supreme Court, the district courts, the superior courts, the county courts, and all other courts of record."

The federal government had confided the administration of the estates of its minor wards to the care of the county courts. It, therefore, insisted that in such courts substantial safeguards should be thrown about these wards. It had become apparent that many guardians were appointed without regard to their fitness, and that it was not uncommon for the lands of minor Indian children to be sold on appraisals, influenced by prospective purchasers, and for inadequate prices. When final reports were called for it was often found that estates had been dis-

sipated. Conditions were presented demanding speedy and radical reforms. These conditions were brought to the attention of the Justices of the Supreme Court of Oklahoma, and on June 11, 1914, to remedy the evils existing, the Supreme Court made and promulgated rules of procedure in probate matters. Rule No. 9 provides as follows:

·"No oil and gas or mineral lease covering lands belonging to minors or incompetents will be approved except after sale in open court to the highest and best responsible bidder. All petitions for the approval of oil and gas leases shall be filed five days before the same are sold, as provided herein, and notice of such sale must be given by posters and by publication where publication is practicable."

The Supreme Court in construing the section of the Constitution and of the Revised Laws of Oklahoma above cited, has held that the rules promulgated June 11, 1914, relating to procedure of county courts in probate matters, have the force and effect of law and are binding upon the court, as well as upon the parties to the action, and cannot be dispensed with to suit the circumstances in any particular case, and specifically that a sale of an oil and gas lease upon the lands of a minor through the probate court, which is not in substantial compliance with said rule 9, is void. Haddock v. Johnson, 80 Okl. 250, 194 P. 1077; Winona Oil Co. v. Barnes, 83 Okl. 248, 200 P. 981; Carlile v. National Oil & Development Co., 83 Okl. 217, 201 P. 377.

[3] This court has repeatedly held that a decision of the highest court of a state, determining the powers of an inferior court under the state Constitution and laws, is binding on us. Barnett v. Kunkel (C. C. A.) 259 F. 394; · St. Louis & S. F. R. Co. v. Quinette (C. C. A.) 251 F. 773. And this is true, even though independently we might not have reached the same conclusion.

[4] This court has had occasion in a number of cases to consider the effect of this rule upon extensions and sales of leases since rule 9 was promulgated. In Jackson v. Gates Oil Co. (C. C. A.) 297 F. 549–554, the issue presented was not identical with that here involved. However, the court impliedly recognized the effect of rule 9 under the decisions of the Supreme Court of Oklahoma just cited. In Tibbens v. Clayton et al., 288 F. 393, the District Court for the Eastern District of Oklahoma, in upholding an oil and gas lease made without competitive bidding, when approved by the probate court, was careful to point out that the extension of the

lease involved was made prior to the adoption of rule 9, and that the county court, therefore, had jurisdiction, in the absence of fraud shown, to make the order of approval. Upon appeal to this court (298 F. 18–22) this judgment was affirmed upon that distinct consideration. It confines its approval of extension proceedings which do not conform to rule 9 to such as were made prior to the effective date of that rule.

Again, in Harrell v. Prairie Oil & Gas Co., 8 F.(2d) 236, this court, speaking through Judge Lewis, recognized the controlling effect of rule 9 as declared by the Supreme Court of Oklahoma in the cases cited. In that case a sale was actually held in strict conformity with the rule, and we held that the substantial compliance required was established. The only question presented pertinent to that under consideration was that by reason of the existing lease, which had several years to run, the original lessee had a prohibitive advantage which would deter independent bidders and that the sale was invalid on that ground. This contention was not ·indulged. Our conclusion is that rule 9, under the Constitution and laws of Oklahoma, and the decisions of the Oklahoma court of last resort, has the force and effect of statute as governing procedure in cases like the present and must be substantially followed; that, otherwise, the resulting lease contracts are void.

[5] Counsel for appellee urge that in the extension of these leases rule 9 was substantially followed. With this we cannot agree. The application of the guardian was for permission to enter into an agreement (already made) with the Los Angeles-Cherokee Oil Company to extend the terms of these leases. The matter was set for hearing on the 10th day of June, 1916. It is true that the notices published announce that the guardian and administratrix will sell at public sale to the highest bidder, subject to confirmation by the court, on the 16th day of June, 1916, but in the report of sale made by the guardian on the 16th of June no reference is made to a sale having been made; on the contrary, the announcement is made that the guardian has executed and delivered the oil and gas mining leases pursuant to the terms of the prior agreement entered into in writing with the Los Angeles-Cherokee Oil Company, as set out in her petition and prayer. The court, by its order on the same day, mentions no sale, but recites the appearance of the guardian and the Los Angeles Company by attorneys; that, having heard the petition, witnesses, and statements of counsel, it is ad-

vised in the premises, finds that the said proposition is beneficial and for the best interests of said minors, and having examined said agreements extending the terms of said leases, approves and confirms the same. There is in all this no pretense that a sale was made, however formal and perfunctory its nature. It is evident from the nature of the petition, the initial order, the notice given, and the final order of confirmation, that no attempt was made to conform to the substantial requirements of rule 9. Sufficient appears to indicate that counsel for the Los Angeles-Cherokee Oil Company were well aware of rule 9 and mindful of its provisions.

The papers in the case, and presumably the orders, were prepared by counsel for the lessee. The original order provided for a hearing on June 10th—not June 16th, as provided in the notice. On June 10th a hearing was to be had, according to the terms of that order, at which any person might appear to contest the sale of such extensions or show cause why said leases should not be extended as prayed. As a result of such hearing the procedure contemplates an order of sale. No such order was made, and no such sale took place. Interested parties attending on June 10th, as contemplated by law and by the terms of that order, might well have been led to believe that no disposition of the matter was to be made and that the plan for extensions had been abandoned or indefinitely postponed. The statement in the original order that notice should be posted in three different places, publication not being practicable, conforms to the provision of the rule. It is probable that this action of the court, together with its subsequent finding on the 16th of June that due and proper notice had been given, is not, standing alone, subject to review. However, the entire proceeding convinces that an attempt was made to show apparent observance of the rule, but that in reality the extensions were made as prearranged without substantial compliance.

[6] It is next urged that, even though it be found that rule 9 was disregarded, nevertheless appellee acquired vested rights at a time when there was no decision as to the effect of this rule upon the jurisdiction of probate courts, and that that jurisdiction, as exercised, had been recognized by the Supreme Court of Oklahoma in prior decisions, which established a rule of property which should not now be overturned. In support of this contention counsel rely chiefly upon Duff et al. v. Keaton et al., 33 Okl. 92, 124 P. 291, 42 L. R. A. (N. S.) 472, and Allen v. Midway Oil & Gas Co., 33 Okl. 91, 124 P.

296, both decided May 14, 1912, Cabin Valley Mining Co. v. Hall, decided February 15, 1916, 53 Okl. 760, 155 P. 570, L. R. A. 1916F, 493, and Eaves v. Mullen, decided January 25, 1916, 25 Okl. 679, 107 P. 433. Under the later decisions of the Supreme Court of Oklahoma, and of this court, it should, perhaps, be sufficient to point out that these four cases were decided before rule 9 was promulgated, and therefore declared a state of law which was changed by the adoption of that rule.

However, the only proposition decided in Cabin Valley Mining Co. v. Hall was that the county court has power to authorize a guardian of a minor to execute an oil and gas mining lease upon the lands of such minor for a period of years beyond the minority of his ward. As stated in Carlile v. National Oil & Development Co., supra, the syllabus in the case, which was by the court, does not cover any other proposition of law. It is further pointed out in the Carlile Case that at the time the Cabin Valley Mining Company Case was tried rule 9 had not yet been promulgated. It is further stated that "the probabilities are that the rule was promulgated by this court and embodied in the probate procedure as an outgrowth of the discussions in the Supreme Court of the Cabin Valley Mining Co. Case." Loc. cit. 224 (201 P. 384). Eaves v. Mullen had to do with a collateral attack upon a decree confirming a sale at public auction. The fact that the sale was actually made removes this case from point in the one before us.

However, in October, 1915, long before the sale to the Los Angeles Company and the assignment to the Prairie Oil & Gas Company, the case of State ex rel. Freeling v. Kight, 49 Okl. 202, 152 P. 362, was decided, in which it was held that the procedure prescribed by the Justices of the Supreme Court of Oklahoma in probate matters must be strictly followed. In its opinion in that case the court said: "Such rules when so prescribed, apply to and are binding upon the county courts of this state, and such courts and the judges thereof are without power to dispense with the requirements of such rules, or to vacate and set the same aside, or to prescribe other rules in lieu thereof or in conflict therewith." The following language is quoted with approval: "Rules have the force and effect of law, and are binding upon litigants, and upon counsel, upon the court and its officers. A rule made pursuant to statutory authority by an appellate court to govern the procedure in inferior courts is binding upon the latter, and rules adopted

by a board of convention of judges are binding upon the individual judges."

From this, apart from the general duty of conforming to the law governing transactions of this nature as it may from time to time be changed and amended, appellee and its assignor had ample notice of the procedure prescribed by the court of last resort. Appellee cannot, therefore, invoke the rule that it is entitled to protection because of vested rights acquired in good faith under an established rule of property. It would seem that we must totally disregard the authority of the Supreme Court of Oklahoma, the rule promulgated by it, and its insistence upon the application of that rule, if we are to hold that these extensions are valid. It is true that captious attacks upon leases and property interests of like nature should not be encouraged, but we cannot overlook a plain disregard of substantive law.

It results that the decrees below, in Nos. 6499 and 6500, should be reversed, with directions to set them aside and to enter decrees favoring appellants; that such decrees, so to be entered, should provide for the termination of the leases and the recovery of the gross results of the operations thereunder, less all operating expenses, with interest on such expenditures, in accordance with the law of Oklahoma as it may be found to apply. It is so ordered.